FARMERS CO-OPERATIVE ELEVATOR COMPANY OF ATWATER v. NELS ENGE and Another.[1]

July 3, 1913.

Nos. 18,078—(196).

**Action on commission merchant's bond — affidavit of consignor.**

1. Section 2119, R. L. 1905, providing that, if a licensed commission merchant shall fail to account for any property consigned to him for sale, the consignor may file with the railroad and warehouse commission an affidavit setting forth the facts, and thereafter bring an action upon the commission merchant's bond, construed and *held;* that the provision for filing the affidavit is merely directory and the failure to file the same not fatal to the right of action on the bond.

**Same.**

2. That provision of the statute was not incorporated therein for the benefit of the commission merchant or the surety on his bond.

Action in the district court for Ramsey county against defendant Enge and Massachusetts Bonding & Insurance Company to recover $2,519.21 from defendant Enge and $2,000 from defendant company. Defendant company demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action against it. From an order overruling the demurrer, Kelly, J., defendant company appealed. Affirmed.

*Brown & Guesmer,* for appellant.

*George H. Otterness* and *O'Brien, Young & Stone,* for respondent.

[1] Reported in 142 N. W. 328.

BROWN, C. J.

The complaint alleges that plaintiff is a corporation, organized under the laws of this state and, at the times stated therein, engaged in the business of buying and selling grain and other farm products at Atwater, this state; that defendant Enge, in April, 1911, was a commission merchant residing and doing business as such at the city of Minneapolis; being duly licensed as such by the warehouse commission under and pursuant to sections 2114 to 2120, R. L. 1905; that at the time the license was so issued to Enge he duly executed to the state the bond required by the statute referred to, upon which defendant bonding and insurance company became surety; the bond was duly approved and conditioned in all respects as required by law, and that Enge would faithfully account and report to all persons intrusting him with grain or other agricultural products and farm produce, and faithfully perform all duties and obligations imposed by law upon him as such commission merchant; that, on April 27, 1911, plaintiff consigned to Enge a large quantity of wheat to be sold by him on the market at Minneapolis, and the proceeds accounted for, less commission charges; that Enge wholly failed to account for such grain or to pay over to plaintiff the receipts therefor, and, on the contrary, converted the same to his own use, to plaintiff's damages in the sum of $1,253.07, no part of which has been paid. The complaint contains a second cause of action for the wrongful conversion by Enge of another consignment of wheat on May 8, 1911, to plaintiff's damage in the further sum of $1,266.-14. The complaint further alleges, upon information and belief, that Enge is not indebted to any other consignor or consignors of grain intrusted to him as such commission merchant. Judgment is demanded against Enge for the total value of the grain converted, and against the bonding company for the sum of $2,000, the penalty of the bond. Defendant bonding company interposed a general demurrer to the complaint, and appealed from an order overruling the same.

Section 2119, being one of the sections of the statute under which Enge was licensed as a commission merchant, and under which the bond in suit was executed, provides as follows:

"If any licensee shall fail to account for any consignment of any

of the commodities mentioned in this subdivision, or to pay to the consignor moneys due on such consignment, the consignor or his agent, within ninety days of the date of shipment, may file with the commission an affidavit setting forth the matters complained of. Thereupon such consignor, within a year after the cause of action accrues, may bring an action upon the bond of the licensee, and recover the amount due him on account of such consignment."

The complaint does not allege that the affidavit mentioned in this quotation from the statute was made or filed with the warehouse commission, and the absence of the allegation is the foundation of defendant's contention that the complaint fails to state facts sufficient to constitute a cause of action. Whether the filing of the affidavit is essential to the right of action on the bond is therefore the only question presented, and that is solved by an answer to the further question, namely, whether the statute in this particular is mandatory or directory. The trial court held it merely directory, and the failure to file the affidavit not fatal to the plaintiff's right of action.

1. The several sections of the statute were designed by the legislature for the protection of dealers in farm produce, who were, in the nature of the business, compelled to intrust the sale of their commodities to commission merchants located at commercial centers. State v. Wagener, 77 Minn. 483, 80 N. W. 633, 778, 1134, 46 L.R.A. 442, 77 Am. St. 681. The statute prohibits any person or corporation from entering into the occupation of a commission merchant except upon compliance with the statute, and receiving a license as therein provided. A formal application to the railroad and warehouse commissioners is required, and upon the granting of a license, the execution of a bond by the licensee, conditioned for the faithful accounting and paying over of proceeds of property consigned to the licensee. The statute further provides for prompt reports, and authorizes the warehouse commission, upon proper complaint, to investigate and inquire into any failure on the part of the commission merchant so to do. Its report is made prima facie evidence of the facts contained therein. The bond runs to the state, but is taken and required "for the benefit of the consignors" of the commission merchant.

The statute was originally enacted in 1899. Chapter 225, p. 245, Laws 1899. The clause heretofore quoted from section 2119, R. L. 1905, providing for the filing of an affidavit preceding the commencement of an action on the bond was not made a part of the original statute. It became a part of the statute, for what reason it is difficult to say, by an amendment adopted by the legislature in 1901. Chapter 277, p. 455, Laws 1901. It was enacted by this amendment that, if any commission merchant shall fail to make prompt report and pay over money received for products consigned to him, "and an affidavit within (90) ninety days from the date when the agricultural products or farm produce * * * were shipped by the owner or consignor * * * setting forth the fault or negligence complained of, shall have been made to the railroad and warehouse commission," an action on the bond may be brought to recover the amount due the consignor. Section 3 of the original statute, now 2118, R. L. 1905, provided for filing a complaint with the warehouse commission of and concerning any default of the commission merchant, an investigation into the allegations made, and a report, which was made prima facie evidence of the facts stated in the findings of the commission. The act of 1901, in connection with the affidavit just referred to, expressly declared that it should not be construed as a complaint under section 3. But with respect to what office or purpose the affidavit was intended to fill or serve, the amendment is entirely silent. The amendment, so far as concerns the filing of the affidavit, is perhaps mandatory in language, though its proper construction in that respect is not entirely free from doubt. Thus the statute remained until the revision of 1905, when this part of the law was made to read as hereinbefore indicated.

If the statute as amended and revised in 1905 be construed as imposing upon the shipper or consignor the duty to file the affidavit as a condition precedent to his right of action on the bond, in other words, the statute be construed as mandatory, the order appealed from must be reversed, for it is neither alleged nor claimed that this requirement of the statute was ever complied with. Our conclusion upon the question is in harmony with that of the learned trial judge, namely, that the statute, as amended in 1905, is not mandatory, but

directory or permissive, and the failure to file the affidavit is not fatal to plaintiff's right of action.

2. There is no well-defined rule by which directory provisions of a statute may be distinguished from those which are mandatory. A statute couched in permissive language may, when construed in the light of the manifest purpose and intention of the legislature, be mandatory, and a failure of compliance therewith fatal to rights asserted thereunder. And a statute, mandatory in language, may be merely directory, depending upon the object to be subserved by the particular requirement. In cases where the statute does not, in express terms, require the thing to be done, and the act provided for is merely incidental or subsidiary to the chief purpose of the law, and not designed for the protection of third persons, and the statute does not declare the consequences of a failure of compliance, the statute will ordinarily be construed as directory and not fatal to rights granted. 2 Sutherland, St. Const. 610, et seq.

In the statute under consideration there is no positive command that the affidavit be filed, no clause therein declaring a failure to file it fatal to the right of action on the bond, and it seems clear that the protection of the rights of third persons was not in contemplation at all. It was clearly not intended for the benefit of the surety on the commission merchant's bond, for no provision is contained therein for the service of the same upon the surety, or for notification that it has been filed. Upon the filing of the affidavit, reads the statute, an action may be brought upon the bond. If there had been any purpose to protect the surety, undoubtedly some provision for communicating to him the default of the principal and of the filing of the affidavit would have been included in the statute. Instead of making any such provision, or any other provision indicating a purpose to protect the rights either of the surety or third persons, the statute simply says, "the affidavit may be filed." And though the language of the statute cannot be ignored, some force must be given its provisions, we are clear that they cannot be construed in the light contended for by defendant.

The original statute is free from criticism. It constitutes a complete workable statute. The only purpose of an affidavit or complaint,

as the statute was then enacted, was to inaugurate proceedings before the warehouse commission, for the purpose of inquiring into any default or neglect of the commission merchant. The consignor could have filed a complaint with the commission, insisted upon an investigation, and subsequently brought an action on the bond, using the report of the commission as evidence in support of his action. And though the statute required a "complaint" to be filed, it is clear that any formal, written, verified information, charging the default complained of, whether labelled complaint or otherwise, would be sufficient to set in motion the inquisitorial proceedings before the commission. An affidavit would answer the purpose of the statute. And, as stated under the statute as originally enacted, an affidavit or complaint would serve the single purpose of inaugurating such proceedings.

The statute was confused and rendered somewhat ambiguous by the amendment of 1901. The section of the original act authorizing suit upon the bond was amended in two respects: First, by requiring the filing of the affidavit, and second, by declaring that the affidavit, when filed, should not be construed as "a complaint within the meaning of section 3 of this act." Just what purpose the legislature had in mind in making this change in the statute is far from clear, and is exceedingly difficult to determine. But if it had been carried forward into the revision of 1905, it would be the duty of the court to ascribe to the change some definite purpose, however difficult it might be to ascertain the intention of the legislature.

However, the revisers of the statutes did not incorporate the amendment of 1901 into the revision, either in form or substance. On the contrary, a substantial alteration of the language was made, and approved by the legislature. The clause of the amended statute providing for filing the affidavit was couched in permissive language, and the clause providing that it should not be construed as a complaint within the meaning of section 3 wholly eliminated. This change is particularly significant, leaving the inference that the revisers and legislature were of opinion that the only purpose of an affidavit was the commencement of inquisitorial proceedings before

122 M.—21.

the warehouse commission, and since form was not the substance of such a proceeding, that in a given case the affidavit might properly be construed as a complaint. In fact the revised statute does not require a "complaint" to be filed. It now provides that when the consignor "complains in writing," the commission shall act. Undoubtedly the revisers were confronted with the difficulty of ascribing to the amended statute a definite and specific purpose, and by their action in modifying the language, making the filing of the affidavit optional with the consignor, and wholly removing the clause expressly declaring that it should not be construed as a complaint, they in effect restored the statute, taken as a whole, to the original enactment, thus leaving it with the consignor to bring about an investigation by filing his affidavit or not, as he might choose. If filed and an investigation followed, the report of the commission could be used as evidence in his suit upon the bond. If not filed, he would be required to furnish the evidence necessary to support his action. In view of the doubtful purpose of the amendment, its ambiguity, we think, in view of the general rule requiring the courts to so construe ambiguous and doubtful statutes as to give force and effect to the intention of the legislature, that the suggested construction is the one most reasonable, and in accordance with the principal purposes of the law; namely, the protection of shippers from the overreaching of commission merchants. We so construe it.

The case is wholly unlike Grant v. Berrisford, 94 Minn. 45, 101 N. W. 940, 1113. That was an action upon a contractor's bond. The statute authorizing the action expressly provided that "no action shall be maintained on any such bond unless plaintiff, within ninety days after performing the last item of work * * * shall serve upon the principal and the surety or sureties in said bond, a written notice specifying the nature and amount of plaintiff's claim. * * * "

The statute here involved contains no such requirement or anything the equivalent thereof. The affidavit here provided for is not required to be served upon the surety, nor is there any provision in the statute requiring notice of an intention to sue, or of de-

fault on the part of the commission merchant, before commencing the action upon the bond. This differentiates the cases.

It is probable that, in a controversy between different shippers, the statute might properly enough be construed to exclude from participation in the pro rata distribution of the recovery on the bond all those who failed to file the affidavit. The question, however, is not presented and we do not so decide. But conceding such a construction of the statute to be permissible, it in no way involves the surety on the bond. His liability is fixed and certain, and he is not concerned in the distribution thereof among different claimants.

We have carefully considered all the arguments of counsel in support of the contention that the statute is mandatory with the result stated. No reasons of sufficient force are advanced to sustain or justify that construction of the statute.

Order affirmed.