# FIRST NATIONAL BANK OF GOODHUE v. IOWA BONDING & CASUALTY COMPANY.[1]

## June 17, 1921.

## No. 22,291.

**Action on bond guaranteeing payment of deposit.**

1. The plaintiff bought a certificate of deposit issued by a bank at Tower on November 15, 1918. Its indorsers had recently purchased it from the payee. After the sale to the plaintiff the indorsers applied orally to the defendant for a bond guaranteeing payment, and paid the customary premium. It was issued on November 22, and was received by the plaintiff on November 30, at which time, in consideration of the bond, it released its indorsers. At the time of the oral application it it was contemplated that the Tower bank would make a formal written application and it did so under date of December 2. The bond described the certificate of deposit, gave the name of the payee, and stated that it inured to the benefit of every subsequent holder for value. The Tower bank defaulted and the plaintiff brought suit on the bond.

**Construction of bond — insurer not released by discharge of indorsers of certificate.**

2. The bond is construed to inure to the benefit of the plaintiff bank. Upon payment of the certificate of deposit by the bond company, the latter would have no recourse against the indorsers to the plaintiff, or against anyone except the Tower bank, and the release of the indorsers by the plaintiff did not harm the defendant nor discharge the bond.

**Bond construed in favor of the insured.**

3. Such a bond is in the nature of an insurance contract and is construed in favor of those whose protection is intended.

Action in the district court for Ramsey county to recover $2,568.82 on a contract guaranteeing the prompt payment at maturity of a cer-

[1]Reported in 183 N. W. 832.

tain certificate of deposit. The case was tried before Olin B. Lewis, J., who made findings and ordered judgment in favor of plaintiff for $1,937.99 and interest. From an order denying plaintiff's motion for amended findings and from an order granting defendant's motion for a new trial, plaintiff appealed. Reversed.

*Davis, Severance & Morgan,* for appellant.

*Dille, Hoke, Krause & Faegre,* for respondent.

DIBELL, J.

This is an action to recover on the guaranty by the defendant of the payment of a bank certificate of deposit. There were findings for the plaintiff. Afterwards a new trial was granted upon the ground of error in receiving in evidence the written application for the bond of guaranty by the bank issuing the certificate. The plaintiff appeals from the order granting a new trial.

1. On October 26, 1918, the Merchants & Miners State Bank of Tower, Minnesota, issued to the Mortgage Security Company of Minnesota, Incorporated, a certificate of deposit for $2,500 due in 10 months. The mortgage security company indorsed the certificate in blank without recourse. It was purchased by Kelsey S. Chase, A. L. Mellenthin and A. Hirschman. On November 15, 1918, the certificate was purchased of them by the plaintiff bank in due course for value. It bore their unrestricted indorsements. Soon afterwards Chase and his associates procured a bond of guaranty through the St. Paul agency of the defendant and paid the premium. It was issued on November 22, 1918, from the company's office in Minneapolis. The original application was over the telephone. It was understood that the bank would make a written application. It did so. It was dated December 2, 1918, and was apparently received at the office of the company in Des Moines not later than January 2, 1919, and it was retained. The bond was received by the plaintiff bank on November 30, 1918. It then wrote Chase, stating that the bond covering the certificate of deposit was received and said: "In consideration of the above mentioned bond being given to secure the holder of said certificate of deposit from loss, we hereby release the indorsers of said certificate." The bonding company did not know of this release. So far as appears it did not know

what had become of the certificate. The three indorsers were solvent.

The written application of the bank was for a bond of guaranty for $2,500 in favor of the mortgage security company for moneys placed on deposit and was "to take effect on Oct. 26, 1918, and to end on Aug. 26, 1919." It was on a printed form of the defendant. At the top right hand corner was the notation: "Amount of bond $2500. Premium $10.42. Bond to be in force from 10-26, 1918 to 8-26, 1919." The premium paid was for this period on the basis of five dollars per thousand for a year. The company by the bond guaranteed the prompt payment at maturity of "a certificate of deposit, dated the 26th day of October, 1918," issued by the Tower bank to the Mortgage Security Company and "endorsed in blank." The bond contained this further provision: "The obligation and liability of the guarantor shall extend and inure to each and every subsequent holder and transferee of said certificate for value."

2. The facts are as stated and are not in dispute. The contention of the defendant is that the plaintiff discharged the bond when it released Chase and his associates, its solvent indorsers. The foundation of the claim is that the plaintiff had recourse against them on the certificate of deposit, and that the defendant, if it paid, was entitled to follow them, therefore it was damaged, and was discharged by their release.

The bond guaranteed the payment of the certificate of deposit at maturity in the hands of whomsoever it might be. It was intended to run with the certificate. It took that form. When Chase and his associates orally applied for the bond, it was contemplated that the usual written application by the bank would be made. It was made. The parties interested were thinking of a bond which would guarantee Chase and his associates against the failure of the Tower bank to pay. The fact that the bond was executed after the negotiation of the certificate of deposit to the plaintiff is not under the circumstances important. The language of the bond indicated insurance from the date of the certificate. The written application was for such insurance. The guaranty was directly to the payee or holder of the certificate. The extension of liability "to each and every subsequent holder or transferee" was to holders and transferees subsequent to the payee, not merely those sub-

sequent in time to the actual delivery of the bond. Unless that was the effect, Chase and his associates got no protection for the premium which they paid, for they had at the time parted with the certificate. With the construction given to the contract the case presents no difficulty. The bonding company was not in the position of an indorsee under the law merchant. Upon default of the Tower bank it would be required to pay the then holder of the certificate. It would have no recourse against any indorser. Such is not the plan of these guaranty bonds. Some confusion has come from assuming the bonding company to be a subsequent surety for the plaintiff bank, which had as prior security the prior indorsements of its indorsers, to which the defendant should have recourse when compelled to pay, and by the release of whom it was damaged. The parties might have made such a contract. They did not. The terms of the policy are at war with such a claim. The bond protected the payee of the certificate and subsequent purchasers of it and against them the bonding company had no recourse in the event that it paid the certificate.

3. The guaranty was by a corporation authorized to guarantee deposits. It received pay for its risk. It undertook absolutely that the bank should pay. The bond was in the nature of an insurance contract and should be construed favorably to those for whose protection it was given. See Lakeside Land Co. v. Empire State Surety Co. 105 Minn. 213, 117 N. W. 431; Brandrup v. Empire State Surety Co. 111 Minn. 376, 127 N. W. 424; George A. Hormel & Co. v. American Bonding Co. of Baltimore, 112 Minn. 288, 128 N. W. 12, 33 L.R.A.(N.S.) 513; American Credit Indemnity Co. v. Wood, 73 Fed. 81, 19 C. C. A. 264; Tebbets v. Mercantile Credit Guaranty Co. of N. Y. 73 Fed. 95, 19 C. C. A. 281; Dunnell, Minn. Dig. and 1916 Supp. §§ 9104-9107, and cases; 1 Joyce, Ins. § 339c; notes 33 L.R.A.(N.S.) 513; 47 L.R.A. (N.S.) 295.

We have noted the claim of the defendant relative to the admission in the plaintiff's reply that it accepted the bond. We do not give to it the effect urged, and a discussion is unnecessary.

We hold that the plaintiff bank did not discharge the bond by re-

leasing its indorsers. The trial court was right upon its first consideration of the case, and a new trial should not have been granted.

Order reversed.

BROWN, C. J. (dissenting).

The facts are quite fairly stated in the opinion, but a restatement of a part thereof is necessary to an understanding of my view of the case. The certificate of deposit was issued by the Merchants & Miners State Bank of Tower, on October 26, 1918, payable to the Mortgage Security Company. It was procured from the bank by one Hirschman, who was probably in some way connected with that company. Whether he procured it for the mortgage company, or for himself and associates, Chase and Mellenthin, is not made clear by the evidence. Chase testified that Hirschman was the "real owner," though he "supposed" that he and Mellenthin had some interest therein. But that is not important. On November 14, 1918, the certificate with the unrestricted indorsement of the security company and of Hirschman, Chase and Mellenthin was sold and transferred to the First National Bank of Goodhue, plaintiff in the action, in due course and for value. Thereafter on November 22, 1918, one week later, Hirschman, acting in the name of the Merchants & Miners Bank, the issuer of the certificate, procured from defendant, the Iowa Bonding & Casualty Company, the guaranty contract in question, whereby the bonding company guaranteed to the then or any subsequent holder the prompt payment of the same at maturity, or on the date of any renewal. The guaranty contract was so issued on an oral application, but, as stated in the opinion, with the understanding that a written application would be prepared and presented to the company. A written application was subsequently made by the Merchants & Miners' Bank, acting through its vice-president, Alfred Wadman and D. M. Rick, its cashier, and delivered to the bonding company as evidence of the transaction. It may be conceded that Hirschman attended to all the details in procuring the contract, but he kept under cover, using the name of the Merchants & Miners Bank, and he and his associates were not known to the bonding company at all, or that any interest they had in the matter was involved.

On November 30, 1918, the guaranty bond· was delivered to the Goodhue bank by one Crest, who appears to have been acting for Hirschman, whereupon its president made and delivered a formal release and discharge of Hirschman, Chase and Mellenthin as indorsers of the certificate.

On the trial counsel for plaintiff cautiously declined to concede that the release was valid or effective. But it appears valid on its face and must be so treated in this court; it may, however, be open to the charge of fraud.

The certificate was not paid, the issuing bank being insolvent, and the Goodhue bank still remaining the holder thereof brought this action to recover on the guaranty contract. The bonding company interposed in defense the release of the indorsers, to its prejudice.

The liability of the bonding company on the guaranty contract was that of guarantor of payment, and it is entitled to the legal protection accorded to that relation of secondary liability. It would, on the payment of the debt, be entitled to subrogation to all rights, remedies and securities held by the principal against the debtor at the time the guaranty was made, 3 Dunnell, Minn. Dig. §§ 9045, 9046; a relinquishment of any of which, without the consent of the guarantor, would release and discharge it from further liability. At the time the guaranty was made, Hirschman, Chase and Mellenthin were liable for the payment of the certificate as indorsers, but were subsequently released therefrom by plaintiff, and without the knowledge or consent of the bonding company. That such release discharged the bonding company as guarantor there can be no question in the law. 20 Cyc. 1477.

The effort to spell into the guaranty contract a purpose of the bonding company to release the indorsers then liable for the payment of the certificate, finds no support in the record. The indorsers were not before the bonding company at all, and their anxiety or purpose to be released was not presented, or, so far as the record discloses, considered in any way. Hirschman and associates kept well under cover, in fact, paraded under the skirts of the insolvent Merchants & Miners Bank, the application for the guaranty being made in its name, with no refrence to the indorsers, who then had no title to the certificate, their only relation thereto then being one of liability. To say, judicially,

on this state of the facts that the bonding company intended the guaranty contract as a protection of the indorsers who were liable for the payment of the certificate, is, in my opinion, wholly unjustified.

In the absence of some clear showing of a contrary intention, the contract can be given prospective operation only. Wales v. New York B. F. Ins. Co. 37 Minn. 106, 107, 33 N. W. 322. On its face the contract was intended for the protection of the then or any subsequent holder of the certificate against loss from the failure of the debtor to pay, and not to release securities held by the creditor for its payment.

The whole transaction to me has a malodorous atmosphere; one of deception and fraud. The First National Bank of Goodhue was made an innocent participant by the machinations of the indorsers, acting through Crest, who does not, however, appear to have been a wrongdoer, but who negotiated the sale of the certificate to plaintiff. The bonding company is made the victim by the action of this court in giving, as a matter of law, retroactive operation and effect to the guaranty, and spelling into the contract an intent and purpose to release and discharge the manipulators, who were not before the company at all. In my opinion that question was at least one of fact for a jury, and a new trial was properly granted to the end that it might be so submitted.

I respectfully dissent.