(No. 15832.—Judgment affirmed.)
CALVIN J. BLATTNER, Appellant, *vs.* J. A. DIETZ *et al.*
Appellees.

*Opinion filed February 19, 1924—Rehearing denied April 3, 1924.*

1. ELECTIONS—*ballot need not be handed to voter by judge who indorsed initials thereon.* A ballot which bears no official indorsement of the initials of an election judge or which is indorsed by one judge with the initials of another cannot be counted; but it is not necessary that the ballot be handed to the voter by the same judge who indorsed his initials thereon, as the ballot is sufficiently identified when indorsed by any one of the judges. (*Laird* v. *Williams,* 281 Ill. 233, distinguished.)

2. SAME—*what determines whether provisions of Election law are mandatory.* In determining whether the provisions of the statute regulating elections are mandatory or directory, courts must consider the necessity or importance of the exact performance of the requirement of the law to secure the object the legislature had in view.

3. SAME—*requirement of Election law will be regarded as directory, only, unless it affects result of election.* Where a statute does not declare the performance of certain duties by public officials in connection with the election to be essential to the validity of the election, the provision will be held either mandatory or directory, according to whether it affects the real merits or result of the election, and the provision will be held mandatory if it has a tendency to change or render doubtful the result, and directory if it does not.

4. SAME—*when calling in substitute judge will not render election void.* Where one of the election judges leaves during the progress of the election, another party sworn in to take the place of the absent judge during the remainder of the election is at least a *de facto* judge, and such procedure will not render the election void where it does not appear that any voter was deprived of his right of suffrage or that any illegal votes were cast.

5. SAME—*when finding of the trial court will not be disturbed.* The finding of the trial court in an election contest in counting a certain number of ballots for the appellee in accordance with the testimony of a handwriting expert that the ballots, after being voted for the appellee by crosses in the party circle, were marked with crosses opposite the name of the opposing candidate by unknown parties, will not be disturbed on appeal where the ballots are not certified for review.

6. STATUTES—*intention of statute determines whether it is man-datory or directory.* Whether a statute is mandatory or directory does not depend upon its form but upon the legislative intention, to be ascertained from a consideration of the entire act itself, its nature, its object and the consequences which would result in construing it one way or the other.

7. SAME—*what statutes, as a general rule, are directory.* As a general rule, statutes directing the mode of proceeding by public officers are deemed advisory, and strict compliance with their detailed provisions is not considered indispensable to the validity of acts done under them.

APPEAL from the County Court of Madison county; the Hon. BARNEY C. OVERBECK, Judge, presiding.

FAULKNER & MOORE, and ALVIN C. BOHM, for appellant.

HILES, NEWELL & BROWN, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

At the general election in November, 1922, Calvin J. Blattner was the republican candidate for county clerk of Madison county, Joseph Hotz was the democratic candidate and Tony Acardi was the farmer-labor candidate. The returns of the election showed that Blattner received 11,893 votes, Hotz 11,696 and Acardi 902. J. A. Dietz, John Butler and Joseph Hotz, electors of Madison county, filed a petition in the county court to contest the election, making Acardi and Blattner defendants. Acardi made default and Blattner answered. The evidence was heard, the ballots were re-counted, the court found that Blattner received 11,578 votes, Hotz 11,845 and Acardi 866, and entered a decree that Hotz was elected county clerk, from which Blattner appealed.

The grounds urged for the reversal of the decree are, (1) that the court counted ballots on which one of the judges of election had written his initials but which were handed to the voters by another of the judges; (2) there was no evidence identifying the ballots from precinct No. 6

of Edwardsville township counted by the court as the ballots cast in that precinct; (3) the election at precinct No. 3 of Edwardsville township was void, and the vote of that precinct should have been excluded because one of the judges withdrew about noon and a little less than an hour later was replaced by another person whose authority does not appear; (4) ballots bearing distinguishing marks were counted for the appellee and ballots for the appellant bearing no distinguishing mark were not counted for him; (5) 139 ballots in precinct No. 3 of Venice township which should have been counted for the appellant were counted for the appellee.

(1) Section 22 of the Ballot act provides: "One of the judges shall give the voter one, and only one ballot, on the back of which such judge shall indorse his initials in such manner that they may be seen when the ballot is properly folded." We have held that a ballot which bears no official indorsement of the initials by a judge of the election cannot be counted, (*Kelly* v. *Adams,* 183 Ill. 193; *Caldwell* v. *McElvain,* 184 id. 552;) and that a ballot indorsed by one judge with the initials of another cannot be counted. (*Laird* v. *Williams,* 281 Ill. 233.) In this last case it was said that "the statute is mandatory in its provision that the judge of the election must indorse his own initials upon the ballots that he hands out to the voters to be voted, and that ballots cannot be legally counted upon which a judge of election indorses the initials of another judge and hands them out to the voters to be voted and without indorsing his own initials thereon. The statute is evidently made mandatory for the purpose of preventing fraudulent voting, not only by means of the endless-chain system of voting, but to prevent any ballot from being counted that bears a counterfeit indorsement of a judge's initials. By following the requirements of the statute each judge can generally readily recognize an indorsement of his own initials in his own handwriting, and much more readily than he can iden-

tify as genuine his indorsement of the initials of some other judge although in his own handwriting." In that case the case of *Choisser* v. *York,* 211 Ill. 56, is cited on this point, in which the court said: "The statute is, not only that the initials of one of the judges shall be placed upon the ballot, but that the particular judge who hands the ballot to the voter shall indorse his initials thereon." The court there had under consideration ballots that were stamped with the initials of one of the judges with a rubber stamp, and in *Laird* v. *Williams, supra,* the ballots under consideration were ballots on which the initials of one of the judges were written by another judge. Neither case was like the present, in which the ballots were identified by the initials of a judge who had himself indorsed them on the ballot, and the reasoning of those cases does not apply. Those cases did not require a holding that the particular judge who hands the ballot to the voter should indorse his own initials upon the ballot. The reason for requiring the indorsement is to prevent any ballot from being received or counted which is not identified by the genuine indorsement of the initials of one of the judges. It is true, the statute says that one of the judges shall give the voter a ballot on the back of which such judge shall indorse his initials, but the thing that is essential is that the ballot handed out shall be identified by the genuine indorsement of the initials of one of the judges upon the ballot, and not that the judge who hands the ballot out shall indorse his initials on the ballot. The thing sought is the certain identification of the ballot, and the indorsement of his initials by any one of the judges is as complete and satisfactory an identification whether he himself hands out the ballot or another of the judges.

In determining whether the provisions of a statute regulating elections are mandatory or directory, courts must consider the necessity or importance of the exact performance of the requirement of the law to secure the object the legislature had in view. Whether a statute is mandatory

or directory does not depend upon its form but upon the legislative intention, to be ascertained from a consideration of the entire act itself, its nature, its object and the consequences which would result in construing it one way or the other. In general, statutes directing the mode of proceeding by public officers are deemed advisory, and strict compliance with their detailed provisions is not considered indispensable to the validity of acts done under them. Where a statute does not declare the performance of certain duties by public officials in connection with the election to be essential to the validity of the election, it will be regarded as mandatory if such matter affects the real merits but will be considered directory only and not fatal to the election unless they are such in themselves as to change or render doubtful the result. (*People* v. *Graham,* 267 Ill. 426.) "In an unbroken line of decisions this court has held that while the legal safeguards which are thrown about the ballot must be faithfully observed by those who have been entrusted with their enforcement, yet under the pretense of enforcing them the will of the people should not be defeated by an honest mistake of election officials; that the literal compliance with prescribed forms will not be required if the spirit of the law is not violated; that forms should be subservient to substance when no legal voter has been deprived of his vote and no harm or injury of any kind has been done to anyone." *People* v. *Graham, supra.*

The objection that the ballots indorsed by one of the judges but actually handed to the voter by another could not be received and counted cannot be sustained.

(2) It is not necessary to pass upon the question of the identification of the ballots of precinct No. 6 of Edwardsville township, since the re-count of those ballots discloses a difference of only three votes, which would be lost by the appellee if the point were decided in favor of the appellant, and the result of the election, in view of the conclusion reached on the other points, would not be affected.

311—29

(3) The judges of election in precinct No. 3 of Edwardsville township were Ben H. Cartwright, Ernest Bradshaw and Mrs. Dora Buckles, all republicans. At noon Bradshaw left and Nick Ostendorf, who was a democrat, was sworn in as a judge and acted in Bradshaw's place during the remainder of the election. Ostendorf was at least a *de facto* judge. (*Choisser* v. *York, supra.*) It does not appear that any voter was deprived of his right of suffrage or that any illegal votes were cast, and the election was not void by reason of the irregularity in reference to the judges who conducted the election.

(4) The fourth objection raises the question of distinguishing marks on a number of ballots as to which the appellant in his brief says, substantially, that the questions raised are matters of fact for the most part, that the nature of the objection is clear, and it is not deemed necessary to submit authority on any of the propositions of law involved in them. The ballots are not before this court, and there is no basis for considering any questions of fact which must be determined from the face of the ballots. The objection that ballots objected to by the appellant should have been excluded and those objected to by the appellee should have been counted is not sustained by the record. In any event, a decision of these questions in his favor would be of no benefit to the appellant. His statement shows that 26 ballots were counted for the appellee which the appellant contends should not have been counted for him, and four ballots were not counted for the appellant which should have been counted for him,—30 in all. In addition, 99 ballots were cast in precinct No. 7 of Edwardsville township which were objected to, some on account of the lack of the precinct name and number on the back of the ballots and some on account of the judge placing the initials of another judge upon the ballots. Of these ballots 66 were invalid for the latter reason, leaving 33; but if these 33 ballots were counted for the appellant there are 19 ballots of the

same kind which would be counted for the appellee, so that the total possible gain to the appellant from the votes mentioned in his fourth point could not, in any event, exceed 45, which, with the three votes lost to the appellee in precinct No. 6 of Edwardsville township, would not overcome the appellee's gain of 278 votes to be mentioned in connection with the next objection.

(5) The vote in precinct No. 3 in Venice township amounted to over 700, and the court found that 139 of the ballots in that precinct which were voted for Hotz were marked by some unknown person other than the voters, in the square in front of Blattner's name and were counted as votes for Blattner by the judges of that precinct in making their returns to the county clerk and were not counted as votes cast for Hotz, therefore the court deducted those votes from the vote of Blattner and added them to Hotz's vote. All of the officers of the election testified about what occurred when the polls closed. H. F. Dagasher, who was a republican challenger, was there at that time and remained during the count, which was concluded about six o'clock the next morning, and he testified. From all the testimony it appears that when the polls closed there were about twenty-five people present who were wanting to vote; that as they gave their names and addresses it was learned that they were in the wrong place and they were sent out. Supper was brought in for the officers and challenger and was eaten. After supper, at about six o'clock, the ballot-boxes were opened, the ballots emptied out upon two tables which had been placed together, and the ballots were counted. The challenger testified that he counted some of them and handed them to Smith, one of the election officers, who would not take the challenger's count but also counted the ballots. Smith testified that they sorted out all the straight tickets and split democratic and split republican tickets and then counted the ballots. Crowder, a clerk of the election, testified that the challenger helped separate some of the bal-

lots. Each of the witnesses denied that he marked any of the ballots, and the evidence excludes the possibility of anyone marking them except the officers and the challenger. Each of the 139 ballots had a cross in the democratic circle and a cross in the square opposite the appellant's name. Gus V. R. Mechin was placed on the stand for the appellee and shown ballots A51 to A451, inclusive, from this voting precinct, and was asked to examine them to determine whether the marks made in the squares and circles on each ballot were made by one and the same person or by different persons and whether the marks were made by the same or different pencils. He was sixty-seven years old, lived in St. Louis, was by profession a title examiner, and had forty years' experience in studying and determining handwritings, markings, erasures and figures, having done much work for the United States district attorney, the secret service department, the post-office department and the treasury department. He stated that the cross before the name of the appellant on 143 of the ballots which had been submitted to him was placed there by a different person from the one who placed the cross in the democratic circle. He was cross-examined at length and called attention to the distinguishing features of the cross. His testimony makes it clear that in his judgment there were characteristics, which he pointed out, in the crosses before the appellant's name which distinguished them from the crosses in the democratic circles. He also testified that in his judgment five different persons had been concerned in placing crosses on the ballots before the appellant's name, and the crosses in the circles were made by different pencils from the crosses before the appellant's name, while the crosses before the appellant's name were made by pencils of the same numbering. He was shown the signatures of the election officers to the poll-book and asked if he found anything in them which suggested that the persons who wrote the names might have made the crosses, and he said he did not.

The court counted 139 of the 143 ballots for the appellee. The witness and the ballots were before that court, and the court had the opportunity of inspecting the ballots as the witness called attention to the differences which characterized the crosses, and could determine much better from an inspection of the ballots, in connection with the testimony of the witness, the question of fact, than we can from the testimony of the witness shown in the record together with the description of the crosses. Whether an examination of the ballots sustained the testimony and opinion of the witness is a question which cannot be determined without the presence of the ballots, and we would not be justified by anything in the record in disturbing the finding of the trial court as to these 139 ballots.

The judgment of the county court will be affirmed.

*Judgment affirmed.*