## KRAMER EQUITY ELEVATOR v. INDEMNITY INSURANCE COMPANY OF NORTH AMERICA.[1]

July 5, 1929.

No. 27,348.

*Snyder, Gale & Richards*, for appellant.

*H. V. Mercer & Company* and *E. J. Lien*, for respondents.

HILTON, J.

Defendant appeals from a judgment.

This action was brought against defendant by plaintiff on behalf of itself and all other shippers who had consigned grain to Woodward-Newhouse Company for sale for their respective accounts, during the period covered by the bond hereinafter mentioned, and who had not been paid the proceeds of such sales.

[1]Reported in 226 N. W. 396.

Defendant is a corporation organized under the laws of Pennsylvania, duly licensed to do and doing business in the state of Minnesota as an indemnity insurance company; Woodward-Newhouse Company, hereinafter referred to as the company, was a Minnesota corporation, licensed to carry on the business of a grain commission merchant in the cities of Duluth and Minneapolis and to receive grain for sale for the account of consignors. It had its principal office in Minneapolis and a branch office in Duluth and held a membership in the chamber of commerce of Minneapolis and the board of trade of Duluth.

The company, as principal, and defendant, as surety, made and executed a bond to the state of Minnesota in the amount of $25,000 for the benefit of persons intrusting the company with consignments of grain to be sold for the account of the consignors, which bond was in full force and effect during the times herein material. During said time the company, as such grain commission merchant, received consignments of grain from various shippers throughout the northwest territory, some at Duluth and some at Minneapolis; the shipments received by it at Duluth were sold by it as such commission merchant at the Duluth board of trade, and those at Minneapolis were likewise sold at the Minneapolis chamber of commerce, all in the regular course of business in the exchanges and in the grain trade.

The Kramer Equity Elevator shipped to the company two cars of grain for sale by it for shipper's account; said grain was received by the company at Duluth and sold for $2,660.94 net, of which sum the Kramer elevator has received $1,115.20, leaving a balance of $1,545.74 due, no part of which has been paid. The Farmers Elevator Company shipped to the company three cars of grain under like circumstances, which were sold for $3,605.11 net and on which $678.17 was paid, leaving a balance of $2,926.94, no part of which has been paid. The Riverside Farmers Elevator Company made a like shipment under the same circumstances of one car of grain, which was sold by the company for $1,691.20 net and upon which nothing has been paid.

At and before commencement of this action demand was made upon the defendant for payments of the amounts due from the company to each of the aforesaid shippers and claimants, and payment was refused. The trial court found:

"There are no other accounts of consignments of grain by shippers to said Woodward-Newhouse Co., as such commission merchant, than those herein mentioned, upon the books of Woodward-Newhouse Co., which were sold at Duluth and are unpaid."

The foregoing are in substance the findings of fact of the trial court before whom the case was tried without a jury. As conclusions of law the court found that the defendant was liable on the bond in question to the parties and claimants in the amounts as above recited in the findings with interest thereon, and for their costs and disbursements, and judgment was ordered accordingly and duly entered.

The company had executed two bonds to the state in the sum of $25,000 each, the other bond being with a different surety company as surety. Neither bond, as we construe it, limited the sales to a particular place. The one here involved had reference to a license issued by the railroad and warehouse commission of the state upon application in writing "for a license to receive 'for sale' for account of the Consignor, Grain 'at Duluth;'" it was not thus limited as to place where the commission merchant might sell. The sales here involved however were made at Duluth.

A similar suit was brought by plaintiff against the surety company on the other bond, and upon the trial the two cases were consolidated; the court segregated the cars sold in Minneapolis to the other surety company, and those sold in Duluth to this defendant, and found against the separate defendants for the cars so segregated to each. The other surety company, held for the Minneapolis shipments in a sum aggregating the full amount of its bond, paid the claims against it.

We have carefully examined the evidence, and if we find that the findings of the trial court are sufficiently supported therein, they cannot be disturbed under the familiar rule governing this appellate

court. Gotzian & Co. v. Truszinski, 169 Minn. 199, 210 N. W. 880; 1 Dunnell, Minn. Dig. (2 ed.) § 411, and cases cited.

The claim that the complaint fails to state a cause of action is without merit. The bond in question, together with the statute requiring it, made up the contract of the parties. It is to be governed by the same rules of construction as are ordinary life and fire insurance policies. Downs v. American Surety Co. 132 Minn. 201, 156 N. W. 5; Pearson v. U. S. F. & G. Co. 138 Minn. 240, 164 N. W. 919; First Nat. Bank v. Iowa B. & C. Co. 149 Minn. 279, 183 N. W. 832. The point is predicated on the statement that the complaint contains no allegation that the grain was received by the company "with instructions from the shipper that it be sold at Duluth for his account." There was no provision in the bond requiring instructions from the shipper as to where the grain should be sold. The bond was for the benefit of any shipper who might intrust the company with grain to be sold on its account. There is no requirement in the statute for instructions. The complaint was sufficient to permit proof thereunder that the sales were at Duluth. It was aided in that regard by paragraphs II and III of the answer. Lesher v. Getman, 30 Minn. 321, 15 N. W. 309; Hedderly v. Downs, 31 Minn. 183, 17 N. W. 274; Nixon v. Reeves, 65 Minn. 159, 67 N. W. 989, 33 L. R. A. 506.

Defendant calls attention to G. S. 1923 (1 Mason, 1927) § 6202, which provides:

"If any licensee shall fail to account for any consignment of any of the commodities mentioned in this subdivision, or to pay to the consignor moneys due on such consignment, the consignor, or his agent, may file with the [railroad and warehouse] commission an affidavit setting forth the matters complained of. Thereafter, such consignor may bring an action upon the bond of the licensee, and recover the amount due him on account of such consignment."

The provisions for filing the affidavit are directory and not mandatory; the failure to file it is not fatal to plaintiff's cause of action. It is not for the benefit of the surety. Farmers Co-op. Elev. Co. v. Enge, 122 Minn. 316, 142 N. W. 328. The decision in the same case,

reported in 126 Minn. 485, 148 N. W. 465, does not support the contention of defendant that the court erred in the manner in which it arrived at the amount that plaintiff was entitled to recover.

Defendant asserts that there was no showing that grain was consigned for sale at Duluth. The claim is made that "it is the instructions of the shipper which alone can determine the liability * * * not the actual disposition made of cars;" and also, "it is the intention of the shipper which governs, and not the disposition of shipments made" by the company. With this we do not agree. It is clear plaintiff shipped the grain to the company for sale for its account; the grain was sold; the shipper had not received full payment of the proceeds and is entitled to the balance. A fuller discussion is not necessary. The bond was breached, and the trial court reached a proper conclusion. The court found that the sales were made at Duluth, and this finding is amply supported by the evidence.

The Enge cases, 122 Minn. 316, 142 N. W. 328; 126 Minn. 485, 148 N. W. 465, in many particulars presented a situation similar to the one here involved and are controlling adversely to defendant's contentions. After the last Enge decision the law was amended by L. 1921, p. 262, c. 213, § 4, by adding:

"All licensees handling grain shall keep a separate record of all cars handled on commission in such manner as the commission may prescribe. It is expressly forbidden in this act for a licensee hereunder to carry any of the accounts of grain commission business in an open account."

This addition to the statute can furnish no comfort to defendant. If the company failed to comply with it, the surety cannot escape liability. The bond, as required by the statute, not only requires the company to pay but also that it shall faithfully perform its duties as such commission merchant and shall in all respects observe and comply with all the laws of the state.

We have carefully examined all the assignments of error and find no grounds for reversal therein. The findings of the court were sufficiently supported by the evidence and the conclusions of law of

necessity followed. The case was ably tried by opposing counsel; the trial judge, as is his custom, gave it careful and painstaking consideration; we have been greatly aided by the briefs. The result properly accomplishes the purpose of the statute.

Judgment affirmed.