[File No. 6166.]

STATE OF NORTH DAKOTA EX REL. BEN C. LARKIN, et al., Constituting the Board of Railroad Commissioners of the State of North Dakota, as Trustee of Wheat Growers Warehouse Company, a Corporation, Respondents, v. WHEAT GROWERS WAREHOUSE COMPANY, a Corporation, and Maryland Casualty Company, a Corporation, Appellants.

(249 N. W. 718.)

Opinion filed July 21, 1933.

*Conmy, Young & Conmy,* and *Murphy & Toner,* for appellants.

644

*Arthur J. Gronna*, Attorney General, *T. C. Madden*, Special Assistant Attorney General, and *J. A. Heder*, Assistant Attorney General, for respondent.

BURKE, J. On the 15th day of August, 1930 the Wheat Growers Warehouse Company, a corporation, under chapter 156, Session Laws 1927, executed and delivered the bond, which is the subject of this action, which reads as follows:

"Warehouse Bond

... "Know all men by these presents, That Wheat Growers Warehouse Company, a corporation of Grand Forks, North Dakota, as Principal, and the Maryland Casualty Company, a corporation of Baltimore, Maryland, as surety, are held and firmly bound unto the State of North Dakota, in the respective penal sums set forth herein as to each warehouse listed below, and no more, for the payment of which, in good and lawful money of the United States, well and truly made, we bind ourselves, our heirs, executors, administrators, successors and assigns, firmly by these presents.

. . "In witness whereof, we have hereunto subscribed our names and affixed our seals this 15th day of August, 1930.

"The conditions of this obligation are such, That Whereas the Principal hereof is the owner, lessee or manager of a, line of elevators or

warehouses doing business in the State of North Dakota, as a public warehouse, and which are to be used and operated for a purpose of buying, selling, storing, shipping and handling grain for profit, as public warehouses, as provided by law, relating to public warehouses and warehousemen, the location of said elevators or warehouses and the amount bonded hereunder being as follows:

| Location | Amount of Bond |
|---|---|
| Hoople, North Dakota | $5,000.00 |
| Hensel, North Dakota | $5,000.00 |
| Walhalla, North Dakota | $5,000.00 |
| Bowesmont, North Dakota | $5,000.00 |
| Hebron, North Dakota | $5,000.00 |
| South Heart, North Dakota | $5,000.00 |
| Flasher, North Dakota | $5,000.00 |
| Odessa, North Dakota | $5,000.00 |
| Fort Clark, North Dakota | $5,000.00 |
| Stanton, North Dakota | $5,000.00 |
| Hazen, North Dakota | $5,000.00 |
| Beulah, North Dakota | $5,000.00 |
| Dum Center, North Dakota | $5,000.00 |
| Killdeer, North Dakota | $5,000.00 |
| Eckelson, North Dakota | $5,000.00 |
| Spiritwood, North Dakota | $5,000.00 |
| Eldridge, North Dakota | $5,000.00 |
| Windsor, North Dakota | $5,000.00 |
| Cleveland, North Dakota | $5,000.00 |
| Medina, North Dakota | $5,000.00 |
| Crystal Springs, North Dakota | $5,000.00 |
| Tappen, North Dakota | $5,000.00 |
| Dawson, North Dakota | $5,000.00 |
| Steele, North Dakota | $5,000.00 |
| Burleigh, North Dakota | $5,000.00 |
| Brinsmade, North Dakota | $5,000.00 |
| Flora, North Dakota | $5,000.00 |
| Hesper, North Dakota | $5,000.00 |
| Edgeley, North Dakota | $5,000.00 |

Alfred, North Dakota ................................ $5,000.00
Gackle, North Dakota ............................... $5,000.00
Streeter, North Dakota ............................. $5,000.00
Adrian, North Dakota ............................... $5,000.00
Dickey, North Dakota ............................... $5,000.00
Grand Rapids, North Dakota ......................... $5,000.00
Marion, North Dakota ............................... $5,000.00

Total ...................................... $180,000.00

"Now, therefore, If the said Wheat Growers Warehouse Company shall faithfully discharge and perform its duties as such public warehousemen and comply with all the laws of the State of North Dakota relative thereto and the rules and regulations adopted by the Board of Railroad Commissioners of said State in connection therewith and shall pay for all grain purchased, and all sums for which said principal shall become liable to the holders of warehouse receipts, then this obligation to become null and void, otherwise to remain in full force and effect. Liability under this undertaking commences on the 1st day of August, 1930 and terminates on the 31st day of July, 1931, unless sooner cancelled by order of the Board of Railroad Commissioners.
"Signed, sealed and delivered in the presence of
"[Signed] W. E. Huseby
"[Signed] S. Soper

"Wheat Growers Warehouse Company
"By [Signed] Geo. E. Duis, Pres.

"[Corporate Seal]

"Maryland Casualty Company
"By [Signed] Martin J. Hurley
Attorney-in-fact.

"[Signed] Howard Brissman
"[Signed] LeRoy C. Torkelson

"Attest [Signed] Carl M. Erdman
"By: [Signed] Roy T. Baker
Attorney-in-fact for North Dakota, for
Maryland Casualty Company.
[Corporate Seal]."

This action is against the defendant surety company to recover $1346.66, deficit at the elevator at Burleigh, North Dakota, plus additional expense items charged to the Burleigh warehouse in the sum of $216.26. There was a judgment for the plaintiff from which the defendant appeals and demands a trial de novo in this court.

The action was brought to recover for a shortage in the warehouse at Burleigh and it is the contention of appellant that under chapter 156, of the Session Laws of 1927, all the grain in all the warehouses, the proceeds of insurance policies upon stored grain destroyed, any cause of action for damages upon any bond given by the said warehouseman, and any cause of action for conversion of grain stored is a trust fund for the redemption of outstanding storage receipts of such warehouseman and that it is the duty of the Railroad Commission, under said law, to marshal all the assets of all the warehouses covered by said bond and out of the proceeds of such assets or trust fund redeem all of the outstanding warehouse receipts, scale tickets and checks. That the bond required by § 10 of chapter 155 of the Laws of 1927 must cover all of the warehouses as a whole and does not cover a specific amount on each warehouse; that the defendant is liable for the shortage at each and every warehouse where there is a shortage and is entitled to credit for the receipts from grain sold by the Railway Commission in excess of the amount of claims at any particular warehouse; that the total of the deficit in all the warehouses was $10,557.94, including all of the expenses incurred by the Railway Commission in marshalling the assets and the excess or overage amounted to $7790.88, leaving a difference of $2750.06, which the defendant claims it is liable for on the bond and which amount the defendant offered to pay.

Section 10 of chapter 155, Session Laws of 1927, reads as follows: "Before any license is issued to any public warehouseman, such warehouseman shall file with the commission a bond in such sum as it shall prescribe, which sum shall not be less than five thousand dollars for any one warehouse. Such bonds shall cover the period of the license and shall run to the State of North Dakota for the benefit of all persons storing or selling grain and seeds in such warehouses. They shall be conditioned upon the faithful performance of his duties as a public warehouseman and all of the provisions of law relating to the storage and purchase of grain and seeds by such warehouseman and the rules

·and regulations of the Commission relating thereto. The commission is authorized to require such increases in the amount of bond from time to time as it may deem necessary for the protection of the holders of storage receipts and cash tickets or checks. The surety on such bonds must be a corporate surety company, authorized to do such business within the state of North Dakota, provided, however, that the commission may accept a bond executed by personal sureties, in lieu of a surety bond, when in its judgment such personal surety bond will properly protect the holders of storage receipts and cash tickets or checks. One bond only need be given for any line of elevators, mills, or warehouses owned, controlled or operated by one individual, firm or corporation, and such bonds shall be construed to cover such elevators, mills or warehouses as a whole and not a specific amount to each of such elevators. Every such bond shall specify the location of each public warehouse intended to be covered thereby, and shall, at all times, . be in a sufficient sum to protect the holders of outstanding receipts and cash tickets or checks."

Defendant claims that this statute requires one form of bond which must be construed to cover all of the warehouses as a whole and not a specified amount to each elevator; that the provisions in the statute, namely: "one bond only need be given for any line of elevators, mills, or warehouses owned, controlled or operated by one individual, firm or corporation and such bond shall be construed to cover such elevators, mills or warehouses as a whole and not a specific amount to each of such elevators" is mandatory and exclusive. Now it is clear that such a bond may be given; that is, a bond covering a "line of elevators, mills, or warehouses owned, controlled or operated by one 'individual, firm or corporation" and when it appears that such bond has been given it must be construed to cover all. It was not the intent of the bond, in the instant case, to cover all of the elevators and warehouses owned and operated by the Wheat Growers Company, for this corporation had another line of elevators, which were bonded in another surety company, and, of course, the bond in the instant case covers only the warehouses described.

Chapter 155 of the Session Laws of 1927 is intended to protect the holder of warehouse receipts and grain stored in warehouses and the

Railroad Commission is given a wide discretion in the administration of the law.

Under § 10 "before any license is issued to any public warehouseman · . . . a bond in such sum as [the Railroad Commission] shall prescribe, which sum shall not be less than five thousand dollars for any one warehouse." It may be more than five thousand dollars, but not less. It shall cover "the period of the license and shall run to the State of North Dakota for the benefit of all persons storing or selling grain and seed to such warehouses. [The bond] shall be conditioned upon the faithful performance of his duties as a public warehouseman and all of the provisions of law relating to the storage and purchase of grain and seeds . . . and the rules and regulations of the commission relating thereto." It requires the warehouseman not only to obey the law but the rules and regulations of the commission and "the commission is authorized to require such increases in the amount of the bond from time to time as it may deem necessary for the protection of the holders of storage receipts, cash tickets or checks." If at any time the commissioners are of the opinion that the bond is not sufficient to protect the holders of storage receipts and cash tickets or checks it may require additional bonds. "The surety on such bonds must be a corporate surety company, authorized to do such business within the state of North Dakota;" but even this provision, which is couched in mandatory language, is not mandatory but directory, as it also provides "however, . . . the commission may accept a bond executed by personal sureties, . . . when in its judgment such personal surety bond will properly protect the holders of storage receipts and cash tickets or checks." Thus the commission is given a wide discretion to be exercised for the protection of the holders of storage receipts, cash tickets or checks. It continues: "one bond only need be given for any line of elevators, mills, or warehouses owned, controlled or operated by one individual, firm or corporation." This does not mean that there shall not be a bond for each warehouse in a line of warehouses. It says "one bond only need be given" and it follows that when one only is given it is the intent to make such single bond cover the whole line, and it must be construed as covering all the mills and warehouses of such warehouseman as a whole. The bond, in the instant case, was not drawn, or intended to be drawn, under this last clause of the section.

The commission, exercising its wide discretion, prepared and required the execution of the bond in suit, which is the usual and customary bond required by the commission of all warehousemen. While it is one instrument, it is clearly intended to be a separate bond for each elevator mentioned. It says specifically "That Wheat Growers Warehouse Company, . . . as Principal, and the Maryland Casualty Company, a corporation of Baltimore, Maryland, as surety, are held and firmly bound unto the state of North Dakota, in the respective *penal sums set forth herein as to each warehouse listed below, and no more,* . . .

"The conditions of this obligation are such, That Whereas the Principal hereof is the owner, lessee or manager of a line of elevators or warehouses doing business in the state of North Dakota, as a public warehouse, which are to be used and operated for (the) purpose of buying, selling, storing, shipping and handling grain for profit, as public warehouses, as provided by law, relating to public warehouses and warehousemen, the location of said elevators or warehouses and the amount bonded hereunder being as follows:" Then follows the names, location and the amount for which each one is bonded, viz.: $5,000 each.

"This phrase [need not] does not mean 'must not;' and therefore though by sub-s. 2, s. 1, M. W. P. Act 1882, a husband 'need not' be joined in an action by or against his wife, yet he may be joined." Seroka v. Kattenburg, L. R. 17 Q. B. Div. 177, 55 L. J. Q. B. N. S. 375, 54 L. T. N. S. 649, 34 Week. Rep. 542; Fromant v. Ashley, 22 L. J. Q. B. N. S. 237, 17 Jur. 1050, 1 El. & Bl. 723, 118 Eng. Reprint, 607; Earle v. Kingscote [1900] 2 Ch. 585—C. A.

In the case of Fromant v. Ashley, supra, the court, referring to the law said: "This section enacts that in such a case 'the indorsement shall be considered as particulars of demand, and no further or other particulars of demand need be delivered, unless ordered by the court or by the Judge.' " Lord Campbell, Chief Justice said: "The words 'need not' rather suggest that the plaintiff may deliver other particulars if he chooses."

The law relating to mandatory and directory statutes is well expressed in the case of People v. Frank G. Heilman Co. 263 Ill. App. 514. The statute involved was entitled "An act to regulate the consignment and sale on commission of farm produce." Smith-Hurd,

Rev. Stat. 1933, chap. 5, §§ 17 et seq. Section 3 of the act requires a bond for $5,000 to the Director of Agriculture in standard form as to terms and conditions, approved by the director, to protect the consignor of goods sold on commission. Section 4 prescribes certain things to be done by the consignor and the Director of Agriculture, which the defendant claimed were conditions precedent, which must be read into the bond and when so made a part of the bond there was no right of action against the defendant inasmuch as the things required by § 4 had not been done. The court said: "Whether a statute is mandatory or directory does not depend upon its form but upon the legislative intention to be ascertained from a consideration of the entire act itself, its nature, its object and the consequences which would result in construing it one way or the other. In general, statutes directing the mode of proceeding by public officers are deemed advisory, and strict compliance with their detailed provisions is not considered indispensable to the validity of the acts done under them. Blattner v. Dietz, 311 Ill. 445, 448, 143 N. E. 92. There is no well-defined rule by which directory provisions of a statute may be distinguished from those which are mandatory. A statute couched in permissive language may, when construed in the light of the manifest purpose and intention of the legislature, be mandatory, and a failure of compliance therewith fatal to rights asserted thereunder. And a statute, mandatory in language, may be merely directory, depending upon the object to be subserved by the particular requirement. In cases where the statute does not, in express terms, require the thing to be done, and the act provided for is merely incidental or subsidiary to the chief purpose of the law, and not designed for the protection of third persons, and the statute does not declare the consequences of a failure of compliance, the statute will ordinarily be construed as directory and not fatal to rights granted." Farmers Co-op. Elevator Co. v. Enge, 122 Minn. 316, 320, 142 N. W. 328; 59 C. J. § 631, p. 1072.

In the light of the wide discretion given to the Railroad Commission in said § 10, considered together with all the provisions of chapters 155 and 156 of the Session Laws of 1927, the language in § 10, namely "one bond only need be given for any line of elevators, mills, or warehouses owned, controlled or operated by one individual, firm or corporation" is directory or permissive, that is the railroad com-

missioners may require one bond, sufficient in amount, to cover any line of elevators, mills or warehouses owned, controlled or operated by one individual, firm or corporation and when such bond is given it must be construed to cover all the elevators, mills or warehouses as a whole and not a specific amount to each of such elevators, but this does not preclude the railroad commissioners from requiring and accepting bonds for each individual warehouse. The purpose of the law is to protect the holder of storage receipts and it may be that the storage receipts can be best protected by requiring a bond for each warehouse. The bond is not required for the benefit of the surety company or the warehouse, but is for the protection of the holder of warehouse receipts.

A warehouseman might have such extensive lines of elevators, mills and warehouses that no one surety company could give a satisfactory bond and in such case it would be necessary to require bonds in different surety companies. It is the intention of the law to protect the storage of grain in any emergency.

Chapters 155 and 156 of the Session Laws of 1927 were approved on the same day, namely, March 7, 1927 and are so related that they must be construed together.

Section 3 of chapter 155 gives the Board of Railroad Commissioners general supervision over public warehouses, "including the handling, weighing and storing of grain and seeds, and the management of public warehouses; . . ." and power to "investigate all complaints of fraud and injustice, unfair practices and unfair discrimination, and (power to) . . . make . . . rules and regulations for carrying out and enforcing the law of this state regarding the same." Section 18 provides that whenever a warehouseman receives grain for storage he must give a receipt therefor. "Such receipt shall contain, either on its face or reverse side the following specific *warehouse and storage contract:* 'This grain is received, insured and stored subject to the following charges: one thirtieth of one cent per bushel per day from date of delivery, but not to exceed ten cents per net bushel for one year; provided, however, that if such grain be sold within twenty days no storage shall be charged. Upon surrender of this receipt and payment or tender of a delivery charge per gross bushel of three cents on flax, two cents on wheat or rye; and two cents on other grains, and all other stated lawful charges accrued up to the time of said surrender of this

receipt, the above amount, kind and grade of grain will be delivered to the person named above or his order as rapidly as due diligence, care and prudence will permit. *At the option of the holder of this receipt, the amount, kind and grade of grain for which this receipt is issued shall, on his demand, be delivered back to him, at any terminal point customarily shipped to, or at the place where received,* upon the payment of the above charges for receiving, handling, storage and insurance; and in case of terminal delivery, the payment in addition to the above, of the regular freight charges on the gross amount called for by this ticket, or in lieu thereof, a receipt issued by a bonded warehouse or elevator company doing business at such terminal point. *Nothing in this receipt shall be construed to require the delivery of the identical grain specified herein, but an equal amount of grain of the same kind and grade, shall be delivered to him.'* " Section 28 provides that "whenever any grain shall be delivered to any public elevator or warehouse in this State, and the receipt issued therefor provides for the delivery of a like amount and grade to the holder thereof in return, such delivery shall be a bailment and not a sale of the grain so delivered, and in no case shall the grain so stored be liable to seizure upon process of any court in any action against such bailee, except actions by owners of such warehouse receipts to enforce the terms thereof, but such grain shall at all times, in the event of the failure or insolvency of such bailee, be first applied exclusively to the redemption of outstanding warehouse receipts for grain so stored with such bailee, and in such event all grain on hand in any particular elevator or warehouse, whether the same be stored or not, shall be applied to the satisfaction of receipts issued by such warehouse."

When the farmer delivers his grain to the warehouse it is graded and deposited in the warehouse with other grain of the same quality and grade, he accepts a storage ticket, which entitles him, not to the same identical grain, but to grain of the same quantity, quality and grade as that which he delivered. The holder of the receipt may demand the return of the grain in like kind and quantity, either at the warehouse, which issued the receipt and where the grain was stored, or at a terminal point customarily shipped to; that is the contract between the warehouseman and the holder of the warehouse receipt. See Kastner v. Andrews Grain Co. 49 N. D. 1059, 194 N. W. 824; Carson

State Bank v. Grant Grain Co. 50 N. D. 558, 197 N. W. 146; Stutsman v. Cook, 53 N. D. 162, 204 N. W. 976.

The Board of Railroad Commissioners, under said chapter 156, as trustee in charge of an insolvent warehouse, is authorized to collect all outstanding warehouse receipts, maintain suits at law or in equity, or any special proceeding, for the benefit of such receipt holders, against the insurers of said stored grain, against the warehouseman's bond, against any person for conversion and, of course, any action necessary to enforce the storage contract, according to its terms.

The commission is the holder of the receipt for the purpose of enforcing the storage contract and has all the rights and privileges of the party to whom the receipt was issued. At the option of the Commission, as holder of the receipt, the amount, kind and grade of grain for which the receipt was issued, shall, on demand, be delivered back at any terminal point customarily shipped to, or at the place where received, upon payment of the charges. This is the contract by which each holder, as well as the commission, is bound and upon the insolvency of the warehouseman the commission is directed to proceed, under the statute, to protect the contract rights of the holders of storage receipts.

Since the statute gives the commission a discretion to sue for and recover into the trust fund the amount of any shortage within the bond before it can be definitely ascertained what the ultimate liability of the bondsman may be on account of all the warehouses included in the bond, or bonds, we are of the opinion that the contentions of the appellant to the effect that any judgment on the bond must be for the net liability, taking all of the elevators into consideration, cannot be supported. If ultimately there should be in the trust fund a surplus because of the contribution of the surety or bondsman, the rights of such bondsman to such surplus can be determined when the report of the trustee is presented to the court under § 9 of chapter 156, Laws of 1927, and when the claims of receipt holders are satisfied. At this stage of the litigation before us we are not concerned with a surplus, nor with the ultimate right of the surety to be subrogated to the claims of satisfied receipt holders against an overage in some elevator other than that in which there was a shortage.

This disposes of the question in relation to the expenses of adminis-

tration under chapter 156. It is stipulated that the expenses are reasonable and since the plaintiff is entitled to recover on the bond, it is also entitled to recover the expenses allocated to the warehouse at Burleigh.

The judgment is affirmed.

NUESSLE, Ch. J., and BIRDZELL, BURR, JJ., and BUTTZ, Dist. J., concur.

Mr. Justice CHRISTIANSON, deeming himself disqualified, did not participate, Hon. C. W. BUTTZ, Judge of Second Judicial District, sitting in his stead.