The People of the State of Illinois, Appellee, v. Frank G. Heilman Company et al.
Appeal of Central West Casualty Company, Appellant.

Gen. No. 35,162.

Opinion filed November 24, 1931.

ANDREW J. FARRELL, for appellant; ALBION M. GRIFFIN, of counsel.

ARTHUR L. ISRAEL, for appellee; MILTON KLORFINE, of counsel.

MR. JUSTICE KERNER delivered the opinion of the court.

This is an action in assumpsit brought by plaintiff against Frank G. Heilman Company, a corporation, as principal, and the Central West Casualty Company as surety, on an indemnity insurance contract commonly called a Commission Merchant's Bond. There was a trial by the court, a finding of the issues against the defendants, damages assessed at $5,663.09, judgment to be satisfied upon the payment of $5,000 and a judgment on the finding. To reverse this judgment the defendant, Central West Casualty Company, appeals.

The statement of claim sets forth in substance that on July 1, 1929, the Frank G. Heilman Company was

engaged in the business of receiving farm produce for sale on commission at 945 Fulton street, Chicago, Illinois, and that Central West Casualty Company was engaged in the business of acting as surety on bonds and that the defendants executed and delivered to plaintiff a certain bond or undertaking in and by which said bond the defendants jointly and severally acknowledged themselves to be held and firmly bound unto the plaintiff in the sum of $5,000 to be paid to the plaintiff, which said writing obligatory was subject to a certain condition thereon written to the effect that if the Frank G. Heilman Company, which had applied or at the date of said bond was about to apply to the Director of Agriculture of the State of Illinois for a license to engage in the business of receiving farm produce for sale on commission until the first day of July, 1930, at 945 Fulton street, Chicago, Illinois, pursuant to the provisions of "An Act to regulate the consignment and sale on commission of farm produce," Cahill's St. ch. 5, ¶ 24 *et seq.*, approved June 28, 1919, in force July 1, 1919, as amended, and who has procured to be furnished this bond in accordance with the provisions of said act should honestly account for and handle all the produce received and should make payment to the consignors thereof of all moneys or things of value received for goods consigned to said principal for sale and should indemnify and keep indemnified said consignors from and against all fraudulent acts of said principal in the sale or handling of the goods of said consignors and should keep, perform and abide by all the terms, conditions and provisions of said act and all lawful rules and regulations of the Department of Agriculture of the State of Illinois made in pursuance thereof, then the said obligation was to be void, otherwise to remain in full force and effect; thereupon the State of Illinois by the Director of Agriculture issued a license to the Frank G. Heilman Company to engage

in the business of receiving farm produce for sale on commission, and the said Frank G. Heilman Company proceeded to engage in such business; that there was delivered to the said Frank G. Heilman Company at 945 Fulton street, Chicago, Illinois, certain produce for sale on commission of the kind and value by the consignors and at the times as follows: (here naming the consignors, the date and the amount of their shipments); that the said Frank G. Heilman Company did not honestly account for and handle nor make payment for the produce delivered, nor did it indemnify the said consignors against its fraudulent acts in the handling of the goods of said consignors.

There is no conflict concerning the facts, the defendant admitting that all of the consignors, with the exception of two, have proven delivery and have not been paid the amount of their shipments, and as to those two, after an examination of the record, we are of the opinion the goods were received and were sold and the money had not been paid to the consignors.

The statute involved in this case is known as ch. 5, secs. 3 and 4 (Cahill's Revised Stats. 1931, page 82, pars. 26 and 27), being an "Act to regulate the consignment and sale on commission of farm produce, and to repeal an Act therein named," and provides as follows:

"Sec. 3. Before any such license shall be issued every applicant shall execute and deliver to the Director of Agriculture an indemnity bond for five thousand ($5,000.00) dollars and with sureties satisfactory to the said director. All bonds to be of a standard form as to terms and conditions, approved by the director, and to secure an honest accounting and handling of produce received and for the payment to the consignor of all moneys or things of value received for goods consigned to such licensee for sale and to secure consignor against all fraudulent acts of said licensee in the sale or the handling of the goods of consignor.

And the director may bring an action in any court of competent jurisdiction in the county in which is situated the place of business of the licensee to recover payment for goods sold on commission and not paid to consignor, or not honestly accounted for, and for damages sustained by consignors by reason of such fraudulent acts and wrongful handling and if such licensee has become liable to more than one consignor, and the amount of the bond is insufficient to pay the entire liability, the consignors shall be compensated in proportion to their several claims, the said sums when collected to be promptly paid over to the parties entitled thereto.

"Sec. 4.  . . . .

"When a consignor of farm produce fails to obtain an honest accounting in any transaction he shall within sixty (60) days after the shipment of the goods make a demand upon the consignee for either an honest accounting or payment for goods shipped. Ten days after making this demand, if an honest accounting or payment has not been received by the consignor, he shall file with the director a copy of this demand together with an affidavit setting forth the nature and amount of the goods consigned, the date of the consignment, and the amount he believes to be due and owing him, together with bills of lading and delivery receipts showing the goods were shipped to and received by the consignee. The director shall attempt to secure an explanation or adjustment; failing this, within seven days after receipt of such complaint from consignor, he shall cause a copy thereof, together with a notice of a time and place for a hearing on such complaint, to be served personally or by mail upon such commission merchant. Such service shall be made at least seven days before the hearing, which shall be held in the city, village or township in which is situated the place of business of the licensee. At the time and place appointed for such hearing, the director or his assistants

shall hear the parties to such complaint, shall have power to administer an oath, and shall enter in the office of the director at Springfield, a decision either dismissing such complaint or specifying the facts which he deems established on such hearing, and in case such facts are established as cause him to revoke such license, he shall bring an action on the bond within sixty days of the filing of such decision.''

The defendant contends that the terms and conditions of section 4 of the act are conditions precedent and must be complied with and that the failure of the plaintiff and the consignors, on whose behalf the action was brought, to comply with the conditions enumerated in section 4 is a bar to recovery.

The bond form was prepared by the Department of Agriculture and contains the provision that the commission merchant ''shall honestly account for and handle all the produce received, and shall make payment to the consignors thereof of all moneys or things of value received for goods consigned to said principal for sale, and shall indemnify and keep indemnified said consignors from and against all fraudulent acts of said principal in the sale or handling of the goods of said consignors, and shall keep, perform and abide by all the terms, conditions and provisions of said act, and all lawful rules and regulations of the Department of Agriculture of the State of Illinois made in pursuance thereof,'' and was for the period beginning July 1, 1929, and ending June 30, 1930; the consignments involved in the instant case were between these dates. The evidence shows that seven of the consignors complied with section 4 of the act and that the other two had not complied therewith; there was no evidence in the record that the director of agriculture attempted to secure an explanation from the Frank G. Heilman Company; or that the director of agriculture within seven days after receiving complaints caused a copy of

the complaint to be served on the Frank G. Heilman Company; that a hearing was had; that a decision was entered in the office of the director at Springfield dismissing complaint, or specifying the facts established; that the license was revoked; or that an action was commenced on the bond within 60 days after filing the decision.

A statute requiring a bond constitutes a part of the bond, and it must be assumed that the bond was executed with reference to the provisions of the statute (*Estate of Ramsay v. People,* 197 Ill. 572; *Trustees of Schools v. Chambers,* 240 Ill. App. 295; *Omaha Nat. Bank v. United States Fidelity & Guaranty Co.,* 244 Ill. App. 204, and cases cited), but the whole act must be read into the bond and not only one section or portion. The act is passed as a whole and not in parts or sections. It is not proper to confine attention to the one section to be construed (*Warner v. King,* 267 Ill. 82); the entire act should be read together in order to get its true intent or meaning (*People v. Wm. Henning Co.,* 260 Ill. 554), and the provisions of sections 3 and 4 of the act must be construed along with the provisions of the bond.

The statute is remedial and was intended to protect a large class of people, engaged in agriculture pursuits, who were, in the nature of the business, more or less remote from market, from imposition and actual fraud when intrusting their products and produce into the hands of commission men for sale, located at commercial centers. (*Farmers Co-operative Elevator Co. v. Enge,* 122 Minn. 316.) Remedial statutes must be construed liberally, so as to afford all relief within the power of the court which the language of the act indicates the legislature intended to grant, without departing, however, from the plain and obvious meaning of the language used (*Newby v. Yellin,* 257 Ill. App. 526, 530, and cases cited; *Chicago, B. & Q. R. R. Co. v.*

*Dunn,* 52 Ill. 260, and *McNulta v. Lockridge,* 137 Ill. 270) ; and it will be presumed that the legislature did not intend the law to work a hardship or injustice. (25 R. C. L. 1022.) The language of the statute now under consideration is not ambiguous or uncertain. From a reading of sections 3 and 4 it is apparent that they are not in conflict. The conditions enumerated in section 4 are not conditions precedent. Whether a statute is mandatory or directory does not depend upon its form but upon the legislative intention to be ascertained from a consideration of the entire act it-self, its nature, its object and the consequences which would result in construing it one way or the other. In general, statutes directing the mode of proceeding by public officers are deemed advisory, and strict compliance with their detailed provisions is not considered indispensable to the validity of the acts done under them. (*Blattner v. Dietz,* 311 Ill. 445, 448.) There is no well-defined rule by which directory provisions of a statute may be distinguished from those which are mandatory. A statute couched in permissive language may, when construed in the light of the manifest purpose and intention of the legislature, be mandatory, and a failure of compliance therewith fatal to rights asserted thereunder. And a statute, mandatory in language, may be merely directory, depending upon the object to be subserved by the particular requirement. In cases where the statute does not, in express terms, require the thing to be done, and the act provided for is merely incidental or subsidiary to the chief purpose of the law, and not designed for the protection of third persons, and the statute does not declare the consequences of a failure of compliance, the statute will ordinarily be construed as directory and not fatal to rights granted. (*Farmers Co-operative Elevator Co. v. Enge,* 122 Minn. 316, 320.) To construe section 4 as mandatory and the only manner of procedure, and hold that a

failure to comply with section 4 is a bar to recovery would defeat the intent of the entire act, which was to protect shippers of farm produce from losing the proceeds of their labors by the wrongful acts of commission merchants. Section 3 was clearly enacted for the purpose of protecting them. Section 4, in our opinion, is directory or at least permissive, as there is no positive command that a compliance with section 4 is a condition precedent to the commencement of an action under section 3. There is no language in section 4 declaring a failure to comply with it shall be fatal to the right of action on the bond. Section 4 was not intended for the benefit of the surety on the Commission Merchant's Bond. By section 4 the legislature mapped the course which must be followed to revoke the license issued to a commission merchant. We are also of the opinion that the legislature intended by sections 3 and 4 alternative courses of procedure, which is evidenced by the language found in the two sections; section 4 reads ''shall'' in all portions, while section 3 reads ''and the director 'may' bring an action.''

By this record it conclusively appears that the defendant executed the bond guaranteeing that the Frank G. Heilman Company shall honestly account for and handle the produce received, and make payment to the consignors; that there has been a breach of the condition of the bond and that the consignors for whose benefit this action was brought have suffered the damages found by the trial court.

The judgment being just, it is affirmed.

*Affirmed.*

GRIDLEY, P. J., and SCANLAN, J., concur.