The People of the State of Illinois, Plaintiff in Error, v. Estate of Jack Wirkus et al., Defendants. New Jersey Fidelity & Plate Glass Insurance Company, Defendant in Error.

### Gen. No. 35,368.

Heard in the second division of this court for the first district at the October term, 1931. Opinion filed February 23, 1932.

ARTHUR L. ISRAEL, for plaintiff in error.

ANDREW J. FARRELL, for defendant in error.

MR. JUSTICE KERNER delivered the opinion of the court.

Plaintiff in error brought assumpsit against the Estate of Jack Wirkus doing business as Jack Wirkus & Company, and the New Jersey Fidelity and Plate Glass Insurance Company, on an indemnity insurance contract commonly called a commission merchant's bond. The statement of claim on motion of the defendant, New Jersey Fidelity and Plate Glass Insurance Company, was stricken from the files and the cause dismissed at plaintiff's costs, for a reversal of which this writ of error has been sued out.

The statement of claim sets forth in substance that on July 1, 1930, the Estate of Jack Wirkus doing business under the name of Jack Wirkus & Company was engaged in the business of receiving farm produce for sale on commission at 59 South Water street, Chicago, Illinois, and that the New Jersey Fidelity and Plate Glass Insurance Company was engaged in the business of acting as surety on bonds and that defendants executed and delivered to plaintiff a certain bond or undertaking in and by which they jointly and severally acknowledged themselves to be held and firmly bound unto the plaintiff in the sum of $5,000 to be paid to the plaintiff, which said writing obligatory was subject to a certain condition thereon written to the effect that if the Estate of Jack Wirkus doing business as Jack Wirkus & Company, who had applied or at the date of said bond was about to apply to the Director of Agriculture of the State of Illinois for a license to engage in the business of receiving farm produce for sale on commission until the first day of July, 1931, at 59 South Water street, Chicago, Illinois, pursuant to the provisions of "An Act to regulate the consignment and sale on commission of farm produce," Cahill's St.

ch. 5, ¶ 24 *et seq.*, approved June 28, 1919, in force July 1, 1919, as amended, and who has procured to be furnished this bond in accordance with the provisions of said act should honestly account for and handle all the produce received and should make payment to the consignors thereof of all moneys or things of value received for goods consigned to said principal for sale and should indemnify and keep indemnified said consignors from and against all fraudulent acts of said principal in the sale or handling of the goods of said consignors and should keep, perform and abide by all the terms, conditions and provisions of said act and all lawful rules and regulations of the Department of Agriculture of the State of Illinois made in pursuance thereof, then the said obligation was to be void, otherwise to remain in full force and effect; thereupon the State of Illinois by the Director of Agriculture issued a license to the Estate of Jack Wirkus doing business as Jack Wirkus & Company to engage in the business of receiving farm produce for sale on commission, and the said Estate of Jack Wirkus doing business as Jack Wirkus & Company proceeded to engage in such business; that there was delivered to the said Estate of Jack Wirkus doing business as Jack Wirkus & Company, certain produce for sale on commission of the kind and value by the consignors and at the times as follows: (here naming the consignors, the date and the amount of their shipments); that the Estate of Jack Wirkus doing business as Jack Wirkus & Company did not honestly account for and handle nor make payment for the produce delivered, nor did it indemnify the said consignors against its fraudulent acts in the handling of the goods of said consignors.

In arguing for an affirmance defendant in error contends that the conditions imposed in the second paragraph of section 4 of the Act are conditions precedent and must be complied with, and that the failure of the plaintiff and the consignors, on whose behalf the ac-

tion was brought, to comply with the conditions, is a bar to recovery.

The statute involved in this case is known as ch. 5, secs. 3 and 4 (Cahill's Revised Stats. 1931, page 82, ch. 5, ¶¶ 26 and 27), being an "Act to regulate the consignment and sale on commission of farm produce, and to repeal an Act therein named," and provides as follows:

"Sec. 3. Before any such license shall be issued every applicant shall execute and deliver to the Director of Agriculture an indemnity bond for five thousand ($5,000.00) dollars and with sureties satisfactory to the said director. All bonds to be of a standard form as to terms and conditions, approved by the director, and to secure an honest accounting and handling of produce received and for the payment to the consignor of all moneys or things of value received for goods consigned to such licensee for sale and to secure consignor against all fraudulent acts of said licensee in the sale or handling of the goods of consignor. And the director may bring an action in any court of competent jurisdiction in the county in which is situated the place of business of the licensee to recover payment for goods sold on commission and not paid to consignor, or not honestly accounted for, and for damages sustained by consignors by reason of such fraudulent acts and wrongful handling and if such licensee has become liable to more than one consignor, and the amount of the bond is insufficient to pay the entire liability, the consignors shall be compensated in proportion to their several claims, the said sums when collected to be promptly paid over to the parties entitled thereto.

"Sec. 4. . . .

"When a consignor of farm produce fails to obtain an honest accounting in any transaction he shall within sixty (60) days after the shipment of the goods make

a demand upon the consignee for either an honest accounting or payment for goods shipped. Ten days after making this demand, if an honest accounting or payment has not been received by the consignor, he shall file with the director a copy of this demand together with an affidavit setting forth the nature and amount of the goods consigned, the date of the consignment, and the amount he believes to be due and owing him, together with bills of lading and delivery receipts showing the goods were shipped to and received by the consignee. The director shall attempt to secure an explanation or adjustment; failing this, within seven days after receipt of such complaint from consignor, he shall cause a copy thereof, together with a notice of a time and place for a hearing on such complaint, to be served personally or by mail upon such commission merchant. Such service shall be made at least seven days before the hearing, which shall be held in the city, village or township in which is situated the place of business of the licensee. At the time and place appointed for such hearing, the director or his assistants shall hear the parties to such complaint, shall have power to administer an oath, and shall enter in the office of the director at Springfield, a decision either dismissing such complaint or specifying the facts which he deems established on such hearing, and in case such facts are established as cause him to revoke such license, he shall bring an action on the bond within sixty days of the filing of such decision.''

In the case of *People v. Frank G. Heilman Co.*, 263 Ill. App. 514 (certiorari denied by Supreme Court February 18, 1931), we found it necessary to examine critically the statute now called again into question. As a result of that examination we enounced our construction of the statute and held that compliance with section 4 was not a condition precedent to an action on a commission merchant's bond, brought under the authority of the act for the benefit of consignors.

Counsel for defendant in error urges that a cause of action cannot be predicated upon the bond because the bond is a nullity, and *Godair's Estate v. Case,* 220 Ill. App. 348, is cited, in which the action failed because the named plaintiff lacked legal entity to sue. We think that case is clearly distinguishable in that in the instant case the litigation is between the beneficiary named in the bond and the surety. Whether the Estate of Jack Wirkus could or could not be sued is not the question before us. The question now before us is whether the surety is liable to the beneficiary even though the principal cannot be sued. As a general proposition, the liability of the surety is limited by that of his principal. But to this there are exceptions, and the case before us is one of them. The bond in the instant case is several as well as joint. A general demurrer admits the facts stated in the statement of claim and a motion to strike performs the office of a demurrer. By the motion in the instant case defendant in error admitted the execution of the bond sued on; that there was delivered to the principal the produce enumerated in the statement of claim, and that the principal has not honestly accounted for nor made payment for such produce. Under such circumstances, the surety is bound notwithstanding the Estate of Jack Wirkus could not be sued, as an estoppel *in pais* arises, the effect of which is to conclude the defendant in error from denying its bond is not a binding obligation. (*Covenant Mut. Life Ass'n v. Kentner,* 188 Ill. 431; *Courson v. Browning,* 78 Ill. 208.) In *Coons v. People,* 76 Ill. 383, it was claimed the bond was void, therefore the surety could not be held. It was said (p. 389): "The obligors manifestly intended to bind themselves for the faithful discharge of all the duties of Coons . . . and they delivered it, and the county authorities received it as a valid and effectual instrument. The makers, we may well suppose, intended to deliver a valid instrument. Nor did the county author-

254

ities intend to receive an invalid bond." See also *People v. Johr*, 22 Mich. 461; *Davis v. Statts*, 43 Ind. 103; and *Commonwealth v. Hill*, 145 Mass. 305.

We think the statement of claim stated a cause of action and that the judgment must be reversed and the cause remanded.

*Reversed and remanded.*

GRIDLEY, P. J., and SCANLAN, J., concur.