## WILL LEASURE v. JOSEPH J. CLARKIN, *d. b. a.* NORTH-WESTERN BROKERAGE COMPANY AND ANOTHER. NATIONAL SURETY CORPORATION, RESPONDENT.[1]

March 12, 1943.

No. 33,311.

*Seward R. Moore,* for appellant.
*Durham & Swanson,* for respondent.

HENRY M. GALLAGHER, CHIEF JUSTICE.

Plaintiff, a shipper, sued defendant Clarkin, a wholesale produce dealer, and National Surety Corporation, surety on his bond,

[1]Reported in 8 N. W. (2d) 521.

to recover the proceeds of the sale of a carload of strawberries, less freight and other expenses, sold on commission by Clarkin for plaintiff's account. The trial court on a stipulation of facts made findings and conclusions in favor of the surety company and against Clarkin, who did not answer or otherwise appear in the case. Plaintiff appeals from the judgment.

Clarkin was a licensed wholesale produce dealer doing business in St. Paul, Minnesota, as Northwestern Brokerage Company. As a condition to the procuring of a license from the commissioner of agriculture, Clarkin furnished a bond, with National Surety Corporation as surety, in the sum of $3,000, which provides:

"The condition of this obligation is such that, whereas the principal, under the provisions of Chapter 394, Laws 1931, as amended by Laws 1935, Chapter 186, has made application in writing to the Commissioner of Agriculture, Dairy and Food for license as dealer at wholesale at St. Paul, Minnesota, and, as a condition to the granting of such license, is required by the commissioner to give bond to the state in the amount named herein.

"Now, Therefore, if the principal, being so licensed, shall faithfully perform the duties imposed upon a licensed dealer at wholesale, and shall observe all the laws and regulations relating to the carrying on of such business within the state, and shall make payment, when due, of the purchase price of all produce purchased, and shall promptly report all sales as required by law to persons consigning produce to such dealer for sale on commission, and shall promptly pay to the persons entitled thereto the proceeds of such sales, less lawful charges, disbursements and commissions, and shall make prompt settlement and payment of all claims and charges due the state for services rendered or otherwise, then this obligation shall be void, but otherwise shall remain in full force and effect.

"It is understood, in accordance with the provisions of the statute, that this bond shall be effective only when notice of default of the dealer is given the commissioner as defined by the statute, and that it shall not cover transactions wherein a voluntary ex-

tension of credit has been given by the seller beyond the due date; and also that this bond will expire on May 31, 1940."

The bond, statutory in nature, was given pursuant to L. 1931, c. 394, § 4, as amended by L. 1935, c. 186, § 1, Minn. St. 1941, § 27.04 (Mason St. 1940 Supp. § 6240-18½c). The applicable portions of this statute as they appear in Minn. St. 1941, § 27.04 read:

"The applicant shall execute and file with the commissioner a bond to the State of Minnesota with sureties to be approved by the commissioner, the amount and form thereof to be fixed by the commissioner, conditioned for the faithful performance of his duties as a dealer at wholesale; provided, that any and all bonds heretofore executed and filed with the commissioner by dealers at wholesale containing substantially the requirements of sections 27.04 and 27.05 are hereby confirmed and approved, for the observance of all laws relating to the carrying on of the business of a dealer at wholesale, for the payment when due of the purchase price of produce purchased by him when notice of default is given the commissioner within 30 days after the due date; provided, that the bond shall not cover transactions wherein it appears to the commissioner that a voluntary extension of credit has been given on the produce by the seller to the licensee beyond the due date, for the prompt settlement and payment of all claims and charges due the state for services rendered or otherwise, for the prompt reporting of sales, as required by law, to all persons consigning produce to the licensee for sale on commission, and the prompt payment to the persons entitled thereto of the proceeds of such sales, less lawful charges, disbursements, and commissions. The bond shall cover all wholesale produce business transacted, in whole or in part, within the state, and the license, or a certified copy thereof, shall be kept posted in the office of the licensee at each place within the state where he transacts business."

Plaintiff consigned to Clarkin a carload of strawberries which Clarkin received on May 12, 1939, and sold on the same day. The net proceeds due to plaintiff from the sale were $994.80. On June

3, 1939, Clarkin received payment from the buyer. June 10 he mailed an account of the transaction to plaintiff in Arkansas, together with a check for $994.80, which was dishonored for insufficient funds. On July 5 plaintiff filed with the commissioner his claim for the amount due him and asked payment under the bond. September 22 the commissioner determined that plaintiff had no eligible claim on the bond. On appeal the trial court held "that plaintiff is not entitled to recover anything from the defendant National Surety Corporation; and that defendant National Surety Corporation is entitled to recover from plaintiff its costs and disbursements herein." We assume, in the absence of a memorandum, that the trial court determined that under the bond and the statute plaintiff was required to give a 30-day notice of default to the commissioner of agriculture and that his failure to do so barred his claim. The only question, then, is whether the trial court correctly construed the bond and the statute.

Minn. St. 1941, § 27.01, subd. 5 (Mason St. 1940 Supp. § 6240-18½a[d]), provides that the "due date" in consignment cases shall mean "seven days from the date the sale is made by the broker or handler." Clarkin sold the strawberries on May 12, so the due date was May 19. Plaintiff admittedly failed to give notice of Clarkin's default to the commissioner within 30 days after the "due date" as required by § 27.04 (§ 6240-18½c[b]). But he contends that the 30-day limitation required thereby applies only to transactions between "seller" and "buyer."

That the wholesale produce dealers law applies equally to all relationships between wholesale dealers and their customers, including dealings between consignor and consignee, is apparent from a reading of the whole act. The provision requiring the bond and notice of default "within 30 days after the due date" expressly provides: "The bond shall cover all wholesale produce business transacted, in whole or in part, within the state." Furthermore, § 27.01, subd. 5 (§ 6240-18½a[d]) expressly defines "due date" in cases between consignor and consignee. This definition would be meaning-

less if the limitations provided in § 27.04 (§ 6240-18½c[b]) were not to apply to consignments.

Plaintiff argues that a construction of the bond and of the statute other than that contended for by him would cause injustice, unfairness, and absurdity. His injury was caused by his misplaced trust in Clarkin and his own failure to give notice to the commissioner within the time required by the statute enacted for his protection. The surety company cannot be held beyond the limits of its contract as read in the light of the statute under which it was executed.

The judgment appealed from is affirmed.