HAROLD A. BOZIED, *d.b.a.* BOZIED PRODUCE COMPANY, v. PETE EDGERTON, *d.b.a.* PETE EDGERTON PRODUCE COMPANY, AND ANOTHER. MYRON W. CLARK, APPELLANT.[1]

May 1, 1953.

No. 35,924.

[1]Reported in 58 N. W. (2d) 313.

*J. A. A. Burnquist,* Attorney General, and *Donald C. Rogers,* Assistant Attorney General, for appellant.

*Lauerman, Johnson & Gustafson* and *Streissguth, Berens & Rodenberg,* for respondent.

MATSON, JUSTICE.

Appeal from an order vacating certain findings of the Commissioner of Agriculture, Dairy, and Food for the state of Minnesota (herein referred to as the commissioner).

The respondent is Harold A. Bozied, a produce dealer located at Brookings, South Dakota, who sold a carload of eggs to Pete Edgerton, a wholesale produce dealer located at Walnut Grove, Minnesota. Edgerton was licensed and bonded under the Minnesota wholesale produce dealers act (M. S. A. 27.01 to 27.20).

Edgerton's check for $7,437.20, given to Bozied in payment of a carload of eggs, was returned for insufficient funds. Bozied thereupon, pursuant to § 27.06, filed a claim with the commissioner for reimbursement as provided for by the terms of Edgerton's bond. The bond, required under § 27.04 as a condition precedent to engaging in the business of a licensed wholesale produce dealer, is conditioned to secure compliance by the principal with all laws relating to the wholesale produce business and to secure *the payment when due of the purchase price of produce purchased by the principal.* Section 27.04 specifically provides:

"* * * The bond shall cover all wholesale produce business transacted, *in whole or in part,* within the state, * * *." (Italics supplied.)

At the claims hearing (§ 27.06) the commissioner specifically found that the sale of the eggs by Bozied to Edgerton involved a transaction that was not transacted *in whole or in part* within the state of Minnesota and that therefore Bozied's claim was not allowable against Edgerton's bond. Upon a writ of certiorari, the commissioner's findings and his order denying Bozied's claim were presented to the district court for review. The district court concluded that the commissioner's findings that Bozied's claim was not allowable because the transaction was not transacted *in whole or in part* within Minnesota were not supported by the evidence and the court vacated the commissioner's disallowance of the claim. This appeal is from the district court's order vacating the commissioner's findings.

The issues presented involve:

(1) The scope of review by certiorari as applied to administrative orders.

(2) The meaning of the statutory provision that the bond shall cover all wholesale business transacted *in whole or in part,* within the state.

In passing upon the issues it becomes necessary to state the undisputed facts. A day or two prior to September 24, 1951, Bozied's agent telephoned from Brookings, South Dakota, to Edgerton at Walnut Grove, Minnesota, and told Edgerton that Bozied had some eggs for sale. In this telephone conversation Edgerton said in effect that, because he had a carload sold to the army, he could use the eggs if they came up to grade. Bozied's agent assured him that the eggs were grade A large eggs which would pass army procurement specifications. The telephone conversation then turned to the question of whether Bozied was to make delivery of the eggs to Walnut Grove or whether Edgerton was to call for them. Because Bozied had no truck available, Edgerton, on September 24, 1951, sent

his truck and truck driver from Walnut Grove to Brookings to get the eggs. Edgerton sent with the truck driver his personally signed check which was in blank as to the amount. The truck driver was authorized and directed to fill in the amount of the purchase price, upon receiving the eggs, and deliver the check to Bozied in payment. This he did. Bozied accepted the check, but it was returned for insufficient funds and as a result we have these proceedings.

■ We cannot agree with appellant commissioner's contention that the sole issues presented for review are whether his action was arbitrary and unreasonable so that it represented his will and not his judgment and whether the evidence sustains his determination. Rather the primary issue is whether his findings were controlled by an erroneous theory of law in applying § 27.04 to the facts. It is well settled that in reviewing by certiorari the determinations of an administrative commission, board, or officer, the court may properly inquire into and consider: (1) Whether the board kept within its jurisdiction; (2) whether it proceeded upon a correct theory of the controlling law; (3) whether its act was arbitrary or so unreasonable as to reflect its will and not its judgment; and (4) whether the evidence reasonably sustains its order or determination.[2]

■ We proceed to the question of law as to whether, in the light of the undisputed facts, Bozied's sale of the eggs to Edgerton constituted wholesale produce business transacted, *in whole or in part,* within the state as provided by § 27.04. The wholesale produce dealers act, which applies to all relationships between wholesale dealers and their customers,[3] is, in the light of its terms as a whole and as recognized by administrative interpretation of long standing,[4] for the protection of every person selling certain farm pro-

---

[2]Stronge & Lightner Co. v. Commr. of Taxation, 228 Minn. 182, 36 N. W. (2d) 800; 1 Dunnell, Dig. (3 ed.) § 397b, 3 Dunnell, Dig. (3 ed.) § 1402, and cases therein cited.

[3]Leasure v. Clarkin, 214 Minn. 420, 8 N. W. (2d) 521.

[4]See, Opinions Attorney General, No. 401-B-20(a), April 12, 1929 (this opinion relates to an earlier act which was the forerunner of the wholesale produce dealers act of 1931); Opinions Attorney General, No. 211-C-15, March 12, 1940.

ducts to a licensed wholesale dealer. Specifically, the purpose of the act is to protect the producers of farm products by assuring to them a financially reliable market.[5] Like any other statute phrased in words of general application, its protective coverage—in the absence of an expression of legislative intent to the contrary—is not limited to residents of the state.[6]

As a remedial act,[7] § 27.04 should be construed liberally to accomplish its protective purpose. The legislative intent to avoid a narrow or technical interpretation and application of its protective provisions is made clear by the express wording of this section to the effect that the bond shall cover business *transacted* in whole or *in part* within the state. The word "transact" embraces in its meaning the carrying on or prosecution of business negotiations.[8] "Transaction" is a broader term than "contract."[9] A contract is a transaction but a transaction is not necessarily a contract. In other words, a "transaction" may involve business negotiations which have been either wholly *or partly* brought to a conclusion.[10] The legislature no doubt would have used a more specific term than *transact* if a narrow application had been intended. A legislative intent to guard against a narrow construction is further shown, if not conclusively demonstrated, by the further provision that the business need be transacted only *in part* within the state.

■ Applying these principles to the facts of the instant case, it is clear that Bozied's sale of the eggs necessarily involved business

[5]State v. Marcus, 210 Minn. 576, 299 N. W. 241. Cf. M. S. A. 223.07; Kramer Equity Elev. v. Indemnity Ins. Co. 178 Minn. 136, 226 N. W. 396; Farmers Co-op. Elev. Co. v. Enge, 126 Minn. 485, 148 N. W. 465; Farmers Co-op. Elev. Co. v. Enge, 122 Minn. 316, 142 N. W. 328.

[6]See, Renlund v. Commodore Min. Co. 89 Minn. 41, 93 N. W. 1057; Boeing v. Owsley, 122 Minn. 190, 142 N. W. 129; First Nat. Bank v. Schneider, 179 Minn. 255, 228 N. W. 919; Village of Litchfield v. County of Meeker, 182 Minn. 150, 233 N. W. 804; Baldwin v. Standard Acc. Ins. Co. 237 App. Div. 334, 261 N. Y. S. 507; 6 Dunnell, Dig. & Supp. § 8969.

[7]See, People v. Frank G. Heilman Co. 263 Ill. App. 514.

[8]Webster's New International Dictionary (2 ed.) (1947) p. 2688.

[9]Black, Law Dictionary (4 ed.) p. 1668.

[10]Funk & Wagnalls New Standard Dictionary (1945) p. 2548.

transacted *in part* within Minnesota. The telephone call from Bozied's office to Edgerton was an integral part of their business transaction, and to that extent the transaction was conducted as much in Minnesota as in South Dakota. A telephone call, unlike a newspaper advertisement which reaches no one in particular, is a direct and purposeful communication between two persons and is as effective as if the parties were talking to each other over a desk. The telephone call had the same effect in producing a sale as if Bozied had journeyed to Walnut Grove and talked with Edgerton face to face. That the egg-sale transaction was consummated, at least in part, in Minnesota by the telephone call is unmistakably shown as a matter of law by the reliance which Edgerton placed on the telephone conversation when he sent his truck driver to get the eggs with a check to be delivered to Bozied in payment. Clearly the legislature by the use of the words "in whole" or "in part" was distinguishing between intrastate business (business done wholly within the state) and interstate business (business done partly within and partly without the state). Where a transaction for the sale of farm produce to a licensed Minnesota wholesale produce dealer is intrastate, or is interstate in a manner and to the degree that an integral part of the transaction is conducted in Minnesota, the seller, even though he be a nonresident, comes within the protective coverage of the wholesale produce dealer's bond provided for by § 27.04. This construction, which seems to us the only one possible, will effectuate the purpose of the statute which is to protect all vendors who have in good faith sold produce to a licensed Minnesota wholesale produce dealer.

The order appealed from is affirmed.

Affirmed.