WESTERN MEAT, INC., AND OTHERS v. DUANE A. WILSON, COMMISSIONER OF AGRICULTURE.

133 N. W. (2d) 631.

February 11, 1965—Nos. 39,169, 39,306.

*Altman, Geraghty & Mulally* and *Sydney A. Berde,* for appellants.

*Walter F. Mondale,* Attorney General, and *Victor J. Michaelson,* Special Assistant Attorney General, for respondent.

NELSON, JUSTICE.

This appeal arises out of an action originally commenced April 18, 1962, to obtain a declaratory judgment as to the construction and validity of the Wholesale Produce Dealers Law, Minn. St. c. 27; an order determining that c. 27 is not applicable to the six plaintiffs; and an order enjoining the commissioner of agriculture from enforcing against plaintiffs the licensing and bonding provisions of § 27.04. A temporary restraining order directed against the commissioner was obtained when the action was commenced.

Orders permitting the addition of other plaintiffs situated similarly as the original plaintiffs were granted on June 1 and June 8, 1962. An order granting a temporary injunction to the original plaintiffs was entered shortly thereafter. On June 24, 1963, pursuant to motions therefor by the commissioner, the court below ordered summary judgment against the six original plaintiffs; vacated and discharged the temporary injunction; and dismissed the complaints as to all additional plaintiffs on the ground the issue was moot as to them.[1] Judgment was entered against each of the additional plaintiffs pursuant to that order July 29, 1963, but apparently was not entered against the six original plaintiffs.

---

[1] Six of these plaintiffs had voluntarily applied for wholesale produce dealers' licenses and had filed the required bonds. One had never obtained such a license, but the commissioner agreed that this plaintiff was not within the purview of the statute.

The additional plaintiffs have made no attempt to refute the trial court's position that as to them the issue is moot. However, the original plaintiffs, hereinafter designated plaintiffs, appealed from the order granting defendant's motion for summary judgment and vacating the temporary injunction they had previously been granted. The order, in so far as it granted summary judgment, is nonappealable, and the appeal from that portion of the order was dismissed by this court February 18, 1964.

Plaintiffs also filed a notice of appeal from "the Judgment of the District Court entered herein on the 29th day of July, 1963." Since the only judgments entered on that date were those against the additional plaintiffs, this purported appeal must be held ineffective.

Minn. St. 605.09(b) provides that an appeal may be taken from an order which grants, refuses, dissolves, or refuses to dissolve, an injunction. Thus that portion of the order entered June 24, 1963, which vacated the temporary injunction is appealable, and we can consider the issues raised by that part of the order. Marty v. Nordby, 201 Minn. 469, 276 N. W. 739.

The facts are not in dispute. Plaintiffs are wholesalers of meats, poultry, fish, and seafood. They make their purchases only from slaughterers, processors, wholesalers, and jobbers, thereafter processing and preparing the resulting products for distribution to other wholesalers, hotels, restaurants, retail stores, and institutions within the state. Some of the items which they process are purchased outside of the state and even in foreign countries. None of plaintiffs deals directly with producers of farm commodities and none makes purchases of products produced upon farms and sold as part of farm operations. As a condition precedent to engaging in their business, the commissioner has demanded that plaintiffs procure the license and bond provided in § 27.04 and comply with the other provisions of c. 27.

Plaintiffs contend that the purpose of c. 27 was and is now to protect farmers from unscrupulous dealers who purchase directly from the farm; and that since plaintiffs make no purchases directly from farmers or directly off the farm, they do not fall within the purview of the statute. They further contend that any application of the provisions of c. 27

requiring them to be licensed and bonded is class legislation and violates their constitutional rights to equal protection of the laws.

Plaintiffs further contend that they operate under terms of credit which are established by mutual agreement with their respective non-farm suppliers and that those suppliers voluntarily extend credit or refuse credit depending upon the credit rating of the plaintiff buying their supplies.

Chapter 27 was first enacted as L. 1899, c. 225, and was titled: "An act to license and regulate and define business of commission merchants or persons selling agricultural products and farm produce on commission, and to require them to give a bond to the State of Minnesota for the benefit of their consignors, and prescribing a penalty for the violation of any of the provisions of this act."

The Department of Agriculture was created by L. 1919, c. 444, and commission merchants or brokers were placed under its jurisdiction. L. 1921, c. 78, § 3, provided in part:

"Every person who shall do any of the things hereinafter specified shall be deemed to be 'engaged in the business of a broker, commission merchant or dealer at wholesale, or retail,' to-wit;

"(a)   Be engaged in, or purport to be engaged in, the business of handling or dealing in farm products, other than grain, hay, straw and livestock, as a broker, commission merchant or dealer at wholesale or retail."

(L. 1921, c. 213, required commission merchants who deal in grain, hay, and straw to be licensed by the Railroad and Warehouse Commission.)

L. 1923, c. 254, § 1, removed retailers from the application of the statute and defined wholesale produce dealers as follows:

"For the purposes of this act any person who shall purchase or contract to purchase, or who shall handle in wholesale lots for the purpose of resale, or who shall handle on account of or as an agent for another, any produce as herein defined, shall be deemed a dealer at wholesale."

Section 2 of this act provided:

"The term 'produce' as used in this act shall mean and include the natural products of the farm, except hay, grain, straw and livestock other than veal; the natural products of the orchard, garden and apiary; the raw and finished products of the dairy, creamery, cheese factory, condensery and dry milk factory; the products of livestock, including wool, mohair, skins, hides and meats; veal; poultry and poultry products; game and fish."

L. 1941, c. 318, exempted those who purchase and pay in cash and transport the produce within 72 hours to points outside of this state. There were no pertinent changes by reason of the enactment of L. 1943, c. 312, or L. 1961, c. 163. Other legislative changes in c. 27 have been slight or minor, the definitions of produce and of wholesale produce dealer remaining for all practical purposes the same today. See, Minn. St. 27.01 and 27.02.

Minn. St. 27.03 reads as follows:

"No person shall engage in, or purport to be engaged in, or hold himself out as being engaged in, the business of a dealer at wholesale, or as being a dealer at wholesale, unless he shall be licensed to carry on such business by the commissioner."

Section 27.19 prescribes penalties for the violation of the statute.

Clearly, the issues on this appeal are whether a wholesaler in produce who does not buy directly from farmers and who does not buy any items produced upon farms and sold as part of farm operations is subject to the provisions of c. 27; and, if he is, whether such inclusion constitutes class legislation violative of Minn. Const. art. 1, § 2, and art. 4, § 33. While several decisions have been rendered involving the statute since it was first enacted in 1899, this court has not heretofore been presented with the precise issues raised on this appeal. Essentially, we must determine whether the purpose of the act is to protect the farmer and producers on the farm or to protect all sellers of produce.

The constitutionality of the statute was first questioned shortly after its enactment in State ex rel. Beek v. Wagener, 77 Minn. 483, 80 N. W. 633, 778. Relator there was indicted for engaging in the business of a commission merchant without license and bond. There is no

indication to be found in the decision that the consignor was not a farmer. The court in holding the statute constitutional discussed the need of such legislation, stating (77 Minn. 494, 80 N. W. 635):

"Obviously, the act was not intended as a measure for the accumulation of a public revenue, and, if sustained at all, it must be upon the ground that it is a lawful regulation for the public good,—a legitimate exercise of the police power of the state.

"The design seems to have been to protect a large class of people, engaged in agricultural pursuits, and more or less remote from market, from imposition and actual fraud when intrusting their products and produce into the hands of commission men for sale."

The issue of class legislation was raised in the Wagener case, grounded upon the fact that the statute did not protect the farmer who consigns cattle, wool, or hides. This court countered that argument by saying that the conditions which surround the consignment and sale upon commission of those articles are radically different from those which surround the items encompassed by the statute. In other words, the court indicated that it felt that there was a peculiar need for such legislation and that this need was satisfied when the statute was enacted. It is clear from the court's discussion that the purpose of the enactment of the statute was to protect farmers from "fly-by-night" buyers who take the farmers' produce and either fail to pay them for it or pay them less than its worth.

The constitutionality of the statute was again questioned in State v. Marcus, 210 Minn. 576, 299 N. W. 241. This court in the Marcus case was concerned with substantially the same statute as is in existence today. The defendant was charged with selling 25 bushels of apples without a wholesale produce dealer's license. The appeal in that case raised two questions: (1) Whether the information charged a public offense; and (2) whether or not the statute is constitutional. Again, in the Marcus case there was no indication that defendant did not buy directly from the farmer. The court said (210 Minn. 577, 299 N. W. 242):

"The law in question regulates wholesale dealers in produce by plac-

ing them under the supervision of the commissioner of agriculture. Obviously, it is designed to protect the farmer. * * *

* * * * *

"The purpose of the law here in question is obviously to protect farmers and the producers of the products described therein, and it requires a bond, the amount of which is to be fixed by the commissioner of agriculture, *to protect vendors who have sold produce purchased by the wholesaler when such articles have been produced upon farms and sold as part of the farming operations thereof.* * * *

"In our opinion, the classification made by the law in favor of the producers of farm products is germane to its purpose and is abundantly *justified by the nature of the business of farmers and their situation in their dealings with wholesale dealers engaged in purchasing their products.*" (Italics supplied.)

The court affirmed the overruling of defendant's demurrer and upheld the constitutionality of the statute, stating that the law does not place unreasonable restraints upon the right to pursue the business of dealer at wholesale in farm products.

The commissioner suggests that this court in Trovatten v. Minea, 213 Minn. 544, 7 N. W. (2d) 390, 144 A. L. R. 1263, indicated that the statute under consideration applies to wholesalers who buy produce from persons other than farmers. The case involved a proceeding brought by the commissioner in behalf of two creameries in Wisconsin against the surety of Minea, a wholesale produce dealer, to recover approximately $2,000 for butter sold to Minea by the creameries. Minea had procured a bond in conformance with the provision of the wholesale produce statute. It is to be noted that he purchased butter from creameries and not directly from farmers. The only issue, however, which the Trovatten case presented to this court was whether the bonding company was liable. The bonding company defended on the ground that, although the bond was issued solely in the name of Minea, the business was operated jointly with his wife, and since she also made purchases the status of the principal was substantially changed and therefore relieved the bonding company of liability. This court, on appeal, found the bonding company liable. It is clear

that the case was in no way concerned with whether it was proper or necessary to require a dealer who did not purchase directly from the farmer to procure a bond as a condition precedent to doing business.

In Leasure v. Clarkin, 214 Minn. 420, 8 N. W. (2d) 521, the only question presented to this court for decision was whether failure to give the statutory 30-day notice of default barred the claimant's right to sue on defendant wholesale dealer's bond. Plaintiff in that case was an Arkansas shipper who had consigned a carload of strawberries to a wholesale produce dealer who sold the strawberries but failed to account to plaintiff for the proceeds. In the action brought on the dealer's bond, the bonding company defended on the grounds that plaintiff had not given notice to the commissioner of agriculture within 30 days after the date payment was due, as the statute requires. Plaintiff asserted that the 30-day limitation applied only to transactions between "seller" and "buyer" and that since the relationship between him and defendant was that of consignor and consignee it did not apply to him. This court refused to accept that argument and in rendering a decision for the bonding company said (214 Minn. 423, 8 N. W. [2d] 522):

"That the wholesale produce dealers law applies equally to all relationships between wholesale dealers and their customers, including dealings between consignor and consignee, is apparent from a reading of the whole act."

The foregoing case is therefore similar to Trovatten v. Minea, *supra,* in that it also was against a bonding company, and whether the wholesale produce dealer was actually compelled to procure a bond was not raised.

The last decision dealing with the statute involved herein is Bozied v. Edgerton, 239 Minn. 227, 58 N. W. (2d) 313. In that case an egg dealer located in South Dakota brought an action to recover from the surety on a wholesale produce dealer's bond for a carload of eggs shipped from South Dakota to a Minnesota dealer. The claim, in accord with statutory requirement, was filed with the commissioner of agriculture. The commissioner decided in favor of the bonding company, but this decision was later reversed by the district court. Only two issues were presented to this court on appeal: The scope of review

by certiorari as applied to administrative orders, and the meaning of the statutory provision that the bond shall cover all wholesale business transacted in whole or in part within the state. We held that the business was transacted in part within the State of Minnesota, and in doing so said (239 Minn. 230, 58 N. W. [2d] 315):

"* * * The wholesale produce dealers act * * * is, in the light of its terms as a whole and as recognized by administrative interpretation of long standing, *for the protection of every person selling certain farm products to a licensed wholesale dealer.* Specifically, *the purpose of the act is to protect the producers of farm products by assuring to them a financially reliable market.* * * * its protective coverage * * * is not limited to residents of this state." (Italics supplied.)

Again, the question of who is covered by the act was not raised on appeal and therefore was not decided by this court in Bozied v. Edgerton, *supra.*

. It can thus be said that the only concrete conclusion which may be drawn from the foregoing decisions is that the purpose of the statute throughout the years since its enactment in 1899 has been to protect the farmer for reasons understood and made well known at that time.

It is significant that Trovatten v. Minea, *supra*; Leasure v. Clarkin, *supra*; and Bozied v. Edgerton, *supra,* were actions against bonding companies. This court made the following comment in Raymond Farmers Elev. Co. v. American Surety Co. 207 Minn. 117, 119, 290 N. W. 231, 233, 126 A. L. R. 1351:

"* * * A suit against a surety on the contract is an action for the recovery of money based upon the promise to pay. * * * the only question in determining the surety's liability is whether the acts for which the principal is liable are within the provisions of the bond. If so, the surety stands as to the merits in the same shoes as the principal."

A bonding company has certain recognized defenses which it can raise against a creditor, but we have not found a case which permits a bonding company to defend against a creditor's suit on the theory that the principal was not under an obligation to secure the bond. It would be an anomaly in the law if a bonding company could assert,

after it had collected a premium, and had issued a bond for the protection of general creditors, that it would not be liable on that bond even though its principal had become defunct, because the principal mistakenly believed he was under compulsion to secure the bond.[2] Such a defense, however, was not raised in the Trovatten, Leasure, and Bozied cases and it is therefore clear that the issue of whether wholesalers who purchase exclusively from other wholesalers fall within c. 27 has not been passed upon by this court.

The attorney general has construed c. 27 as requiring a purchaser who buys in whole lots from the farmer to furnish a bond conditioned on paying him, irrespective of the buyer's prospective use. See, Opinion Attorney General, No. 832, j-11, Feb. 9, 1962. He has not rendered an opinion on the issue before us.

The only case concerning a question like that before us which has come to our notice is State v. Chisesi, 187 La. 675, 175 So. 453. Defendants in that case were convicted of failing to obtain wholesale produce dealers' licenses in violation of a statute very similar to ours. In reversing the convictions, the Louisiana court said (187 La. 678, 683, 175 So. 454, 456):

"* * * The question is whether the statute which the defendants stand convicted of violating contravenes the Fourteenth Amendment, and particularly the equal protection clause in the Fourteenth Amendment, of the Constitution of the United States. * * *

* * * * *

"* * * They [defendants] are wholesale dealers in poultry and eggs. * * * The poultry and eggs are bought and paid for outside of Louisiana, and the transactions, as far as the buying is concerned, are completed outside of the state. Thereafter, the poultry and eggs are transported into Louisiana and to New Orleans, in motortrucks, and are sold here, to retail dealers.

"It is said that the purpose of the statute is to protect the farmers

---

[2]See, First State Bank v. C. E. Stevens Land Co. 119 Minn. 209, 137 N. W. 1101, 43 L. R. A. (N.S.) 1040, Ann. Cas. 1914A, 1146; Hampshire Arms Hotel Co. v. St. Paul Mercury & Ind. Co. 215 Minn. 60, 9 N. W. (2d) 413.

against fraud or imposition on the part of the wholesale dealers in farm produce. The statute serves no such purpose, as far as the business described in these cases goes, because, according to the custom of the trade, the defendants, and in fact all wholesale dealers in poultry and eggs, buy not from the farmers, but from middlemen, whose business is to buy from the farmers to sell to the wholesale dealers. All of this, however, only goes to show that there is no good reason why the wholesale dealers in farm produce should be centered out from among the wholesale dealers in merchandise generally, to be subjected to such burdensome regulation and discrimination as this statute imposes upon them. * * *

\* \* \* \* \*

"The statute in question in this case, however, is so obviously violative of the equal protection clause in the Fourteenth Amendment that it is hardly necessary to consider the due process clause. The statute has two distinct features that contravene the equal protection clause. One of these objectionable features is that the discrimination against wholesale dealers in farm produce, as distinguished from wholesale dealers in all other classes of merchandise, is arbitrary, because it has no just or reasonable relation to the public welfare."

The other objectionable feature which the court held violative of the equal protection clause was that there had been vested in the commissioner of agriculture arbitrary power to determine who might engage in the business of a wholesale dealer in farm produce.

In State v. Levine, 173 Minn. 322, 323, 217 N. W. 342, 343, this court said:

"* * * It is * * * the duty of courts so to construe a law regulating a lawful business that unreasonable burdens and absurd restrictions be not imposed thereon."[3]

It seems clear that the spirit of c. 27 is to protect farmers from dishonest commission merchants and wholesale dealers who buy produce from them. It would seem a reasonable construction of the statute to say that it requires procurement of a bond and license only by those

---

[3]See, also, Minn. St. 645.17(1).

dealers at wholesale who purchase directly from the farmer. That construction would clearly give the protection which the legislature sought to furnish, since a farmer suffering loss because of the conduct of a wholesale produce dealer to whom he has sold or consigned produce can obtain redress against the supplier of the dealer's statutory bond. We must agree with plaintiffs' contention that requiring those who do not purchase from the farmer to procure a bond as a condition precedent to doing business within the state is wholly unrelated to the purpose of the statute as it in no way furnishes protection to the farmer. We therefore hold that c. 27 encompasses only those dealers at wholesale who make purchases of the farmer's produce directly from him.

It is undisputed that plaintiffs do not make purchases directly from farmers. We therefore conclude that they do not come within the purview of the statute.

The conclusion we have reached makes it unnecessary to consider any constitutional implications of requiring all who deal in wholesale produce to procure a bond and a license as a condition precedent to doing business in this state.

Reversed and remanded with directions to proceed accordingly.