## NATIONAL SURETY CORPORATION v.
## RUSSELL G. SCHWANDT AND ANOTHER.

157 N. W. (2d) 506.

March 15, 1968—No. 40,875.

*William J. Nierengarten,* for appellant.

*Douglas M. Head,* Attorney General, and *Arvid Wendland,* Special Assistant Attorney General, for respondents.

SHERAN, JUSTICE.

Appeal from an order of the district court dismissing a writ of certiorari issued to review action of respondents, the commissioner of agriculture and the state auditor.

The agreed facts are these: On April 15, 1964, relator, National Surety Corporation, became a surety for Robert E. Nelson of Austin, Minnesota, on a bond whereby it agreed to become liable to the extent of $2,000 for any failure on the part of Nelson to pay sums due on account of his wholesale purchases of agricultural products.

The bond was filed with the commissioner of agriculture on the assumption that it was required by Minn. St. 27.04, which provides that an applicant for a wholesale produce dealer's license must execute and file a corporate surety bond to the State of Minnesota in an amount fixed by the commissioner, the conditions of which include the payment when due of the purchase price of products bought by such dealer.

Prior to February 1, 1965, various merchants with whom Nelson had transacted business filed claims against him referable to the bond and totaling an amount in excess of $2,000. On March 29, 1965, in proceedings relating to these claims, the commissioner of agriculture entered findings of fact, conclusions of law, and an order whereby he determined that the relator, as surety on the bond of Nelson, should pay to the commissioner the sum of $2,000 according to the terms of the bond. In compliance, relator paid this amount to the commissioner on April 5, 1965.

Thereafter, presumably because of our decision in Western Meat, Inc. v. Wilson, 270 Minn. 275, 133 N. W. (2d) 631, filed February 11, 1965, which held that wholesale produce dealers *who do not make purchases directly from farmers* are not required to file the statutory bond contemplated by § 27.04, relator demanded that the commissioner of agriculture return the $2,000 which it had paid, contending in effect that Nelson was not engaged in the business of purchasing directly from farmers; that the instrument which had been filed with the commissioner was not enforceable as a statutory bond against relator; and that the payment which had been made was demanded by the commissioner and transmitted by the surety because of a mutual mistake of law.

No appeal was taken from the order of the commissioner of agriculture dated March 29, 1965, which in effect determined the liability of relator on the bond, although appellate review was possible under the terms of Minn. St. 15.0424, subd. 2. No attempt was made to secure review of this March 29th determination by certiorari as might have been done pursuant to § 606.01. The time to do either has since expired.

The check of National Surety Corporation was deposited on April 12, 1965, in a special account of the Department of Agriculture with the First Produce State Bank of Minneapolis and disbursed by drafts of the commissioner to the persons whose claims had been filed and allowed pursuant to § 27.06 and who, it is conceded, are the ones entitled to receive the proceeds of the bond if it is not a nullity. These disbursements were made after relator had demanded the return to it of the $2,000 paid to the commissioner in response to his March 29, 1965, order.

On April 4, 1966, relator filed with the commissioner and the state auditor a verified claim requesting refundment of the $2,000 pursuant to Minn. St. 6.136. A writ of certiorari issued to review the proceedings relating to this claim was dismissed by the district court upon respondents' motion and hence this appeal.

Although the case raises interesting questions as to whether proceedings under § 6.136 are possible in a situation such as this and whether the commissioner's order of March 29, 1965, became an adjudication binding upon relator when the time to initiate proceedings for review of the order expired, we prefer to put decision on the ground that it appears conclusively from the record before us that relator is not entitled to recover the $2,000 paid by it since the money was disbursed by the commissioner of agriculture to the persons who were entitled to receive it from the surety. This is the situation we had in mind when we said in Western Meat, Inc. v. Wilson, 270 Minn. 275, 283, 133 N. W. (2d) 631, 636:

"A bonding company has certain recognized defenses which it can raise against a creditor, but we have not found a case which permits a bonding company to defend against a creditor's suit on the theory that the principal was not under an obligation to secure the bond. *It would be an anomaly in the law if a bonding company could assert, after it had collected a premium, and had issued a bond for the protection of general creditors, that it would not be liable on that bond even though its principal had become defunct, because the principal mistakenly believed he was under compulsion to secure the bond."* (Italics supplied.)

The authorities cited in support of this statement include: First State Bank v. C. E. Stevens Land Co. 119 Minn. 209, 137 N. W. 1101, 43 L. R. A. (N. S.) 1040, Ann. Cas. 1914A, 1146; Hampshire Arms Hotel Co. v. St. Paul Mercury & Ind. Co. 215 Minn. 60, 9 N. W. (2d) 413. See, also, 11 C. J. S., Bonds, § 45; 12 Am. Jur. (2d) Bonds, § 8.

The situation is one where the bonding company has paid what it agreed for a premium to pay on account of claims which the bond was intended to cover. The persons intended to be given protection by the bond are the ones who have received the money paid pursuant to it. Under these circumstances, the acts of the commissioner of agriculture have not caused prejudice to relator entitling it to judicial relief.

Affirmed.